# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| TONY SMITH,<br><br> Plaintiff,<br><br>v.<br><br>E-BACKGROUNDCHECKS.COM, INC.,<br><br> Defendant. | CIVIL ACTION NO.<br>1:13-cv-02658-JEC-RGV |

## DECLARATION OF CRAIG KESSLER IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to 28 U.S.C. § 1746, I, Craig Kessler, declare as follows:

1. My name is Craig Kessler. I am over 21 years of age and am competent to give testimony. I am the President of E-Backgroundchecks.com, Inc. ("BGC"). The facts herein are based upon my personal knowledge and my review of the business records of BGC.

2. I have reviewed the allegations that Plaintiff Tony Smith has made against BGC in case number 13-cv-02658-JEC-RGV currently pending in the United States District Court for the Northern District of Georgia (the "Lawsuit").

3. I am familiar with BGC's policies and procedures for preparing consumer reports. In particular, I am familiar with BGC's policies and procedures for preparing consumer reports using BGC's US OneSEARCH product.

4. I have reviewed BGC's records regarding Plaintiff and am familiar with the consumer report that is the subject of the Lawsuit.

5. BGC's US OneSEARCH product is a multijurisdictional criminal records database that contains public records from sources throughout the United States and its territories.

6. BGC prepares US OneSEARCH reports by matching identifying information from employer end-users to identifiers contained on public records in BGC's database.

7. On September 12, 2012, Dart Transit Co. ("Dart") ordered a US OneSEARCH report from BGC about Plaintiff.

8. To order Plaintiff's report, Dart was required to input into BGC's system Plaintiff's full first name, middle name or middle initial, last name, and date of birth. Dart supplied to BGC: "Tony Willie Smith" with a date of birth of ███████, as well as Plaintiff's Social Security number, which was not required.

9. BGC prepares consumer reports using the US OneSEARCH product in steps. The policies described in this declaration are BGC's normal policies and

procedures for preparing the type of report that Dart ordered about Plaintiff at the time that Dart ordered the report.

10.    First, BGC checks that the consumer does not appear in BGC's "Knockout" table.

11.    The Knockout table is a database of records that have been the subject of a previous successful consumer dispute and that BGC has determined do not belong to a particular consumer. BGC checks the consumer identifying information supplied by the end-user against records in the Knockout table before returning any records to the end-user so that BGC does not produce a report about a consumer that contains records that BGC has already determined do not belong to the consumer. If the identifying information supplied by the end-user matches any consumer in the Knockout table, BGC requires the end-user to supply a Social Security number for the consumer before BGC will return any matching records.

12.    Second, assuming there are no records matching a consumer in the Knockout table, BGC's default search parameters match any records in the database that are a complete match to a consumer's first name, last name, and date of birth, and that either match the consumer's middle name or do not mismatch the consumer's middle name – *i.e.*, records that either do not contain a middle name or

that contain a middle name that matches with the information supplied about the consumer.

13. Dart submitted Plaintiff's information on September 12, 2012 using BGC's default search parameters, which are described throughout this declaration.

14. Plaintiff's information did not match any entries in BGC's Knockout table.

15. BGC found six records in its criminal record database that matched Plaintiff's first name, last name, and date of birth, and which did not contain any middle names (*i.e.*, were not a mismatch to the middle name supplied by Dart).

16. After finding matching records, BGC provided Dart with a summary page of information about each matching record, which showed the first name, last name, date of birth, address, data source, and basic demographic information contained in each matching records (but did not show the actual content of the record), if available, as well as any photograph included with the record.

17. The summary page of information required Dart to indicate whether any of the records, based on a review of the summary information, did not match the consumer about whom the end-user ordered the report. Some employers indicate based on information available to them (such as a photograph) that certain

records are obviously and necessarily not about the consumer and can be excluded in the first step.

18. If the end-user indicates that none of the records match the consumer in the summary screen review, BGC completes the report and provides it to the end-user with no criminal records included.

19. If the end-user indicates that at least one record matches the consumer in the summary screen review, the end-user proceeds to a second step of the process.

20. Dart did not indicate that any of the records supplied by BGC in the first step of the process were not a match to Plaintiff. As such, Dart continued to the second step of the process.

21. In the second step of the process, BGC supplied to Dart a detailed view of the records initially shown in summary form on the first page of the process.

22. Dart was then able to review each record and was required to indicate, for each record and by selecting a box on BGC's system, whether each record was not a match to Plaintiff, was a match and would or might negatively affect Plaintiff's employment, or was a match and would not negatively affect Plaintiff's employment.

23. Once Dart made a selection for each record, BGC completed the report and delivered it to Dart with every record shown in the second step of the process – *i.e.*, every record that is not marked as being *not* a match in the first-step summary review.

24. BGC completed Plaintiff's report on September 12, 2012 and delivered it to Dart electronically that same day.

25. Attached hereto as **Exhibit A** is a true and correct copy of the consumer report about Plaintiff that BGC supplied to Dart on September 12, 2012 that is the subject of the Lawsuit.

26. As of the date of the Report, BGC's system automatically sent an FCRA § 1681k(a)(1) letter to any consumer whose report contains public record information.

27. BGC printed and mailed an FCRA § 1681k(a)(1) letter to Plaintiff when it delivered the final report to Dart.

28. Attached hereto as **Exhibit B** is a letter that BGC sent to Plaintiff dated September 12, 2012 that informs Plaintiff that BGC had provided a report containing public record information to Dart.

29. BGC included, with the letter it sent to Plaintiff in Exhibit B, a copy of the report that BGC supplied to Dart, a copy of a summary of rights under the

Fair Credit Reporting Act, and a form to dispute the information in the report with BGC.

30. On September 17, 2012, Plaintiff called BGC to dispute the report.

31. After reinvestigating, on September 19, 2012, BGC issued a new report to Dart that removed all of the previously reported records on the report that BGC provided to Dart on September 12, 2012. The updated report showed no criminal records for Plaintiff.

32. BGC collects criminal records from jurisdictions throughout the United States. The information reported on public record criminal records varies between jurisdictions. For example, some criminal records do not include any middle name for the subject of the record. Some criminal records do not contain a date of birth. Public criminal records indexes do not contain a Social Security number for the consumer. Some jurisdictions report demographic data on public records, while others omit it or do not collect it in the first instance.

33. The criminal background industry standard for reporting of criminal records is to report records (1) matching a minimum of two identifiers, which may include name, date of birth, SSN, current and previous addresses, and/or driver's license number; and/or (2) stating in client report which identifiers were used to conclude a match existed, and/or (3) stating information is based on "Name Match

Only" if CRA reports based on single identifier. The industry considers reporting records that match a consumer's full name and date of birth to be best practice.

34. BGC receives an average of 10 consumer disputes per day.

35. BGC prepares thousands consumer reports per day using its US OneSEARCH product.

36. Fewer than one in a thousand consumers about whom BGC has prepared a report contacts BGC to dispute an identity error. In many instances when a consumer does allege an identity mismatch, BGC determines that the information was a match.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17TH day of March, 2014.

_____
CRAIG KESSLER