IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TONY SMITH, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 1:13-cv-02658-JEC-RGV |
| E-BACKGROUNDCHECKS.COM, INC., | |
| Defendant. | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

KILPATRICK TOWNSEND &
   STOCKTON LLP
1100 Peachtree St. NE
Suite 2800
Atlanta, GA  30309
Telephone:  (404) 815-6500
Facsimile:   (404) 815-6555

Cindy D. Hanson (GA Bar No. 323920)
John P. Jett (GA Bar No. 827033)
Ross D. Andre (GA Bar No. 280210)
chanson@kilpatricktownsend.com
jjett@kilpatricktownsend.com
randre@kilpatricktownsend.com

*Counsel for Defendant E-BackgroundChecks.com*

Plaintiff asks this Court to send his FCRA case to a jury on the notion that an all-but-inevitable mistake on a background check caused him a *two-day* delay in employment. This supposed delay, even if true, cost Plaintiff nothing. He did not lose any money he would have otherwise earned: instead, he was accepted into Dart's driver training program and earned all of the money that he was expecting. The mere fact that a consumer report contained an error is not, as a matter of law, sufficient to reach a jury. Plaintiff has no evidence that BGC's procedures are deficient and no evidence of damages.

BGC maintains robust and reasonable procedures to assure maximum possible accuracy. Even if a jury could find that BGC's procedures are noncompliant, it is unquestionable that BGC did not willfully violate the statute. The evidence also proves that BGC sent Plaintiff the required notice at the time that BGC prepared Plaintiff's report. Both of Plaintiff's theories of liability are driven by what he *thinks* the law should be, not what the law actually *is.*

Furthermore, Plaintiff's claims that BGC negligently violated the FCRA fail for the independent reason that he lacks evidence of actual damages. His claims for emotional distress and reputational harm fail because he has no evidence—aside from his own self-serving testimony—to corroborate the existence of either. His testimony standing alone is insufficient to reach a jury. Plaintiff also has no lost

wages. He was accepted into and completed the paid training program. Plaintiff

has cited no case for the proposition that a delay of employment that does not

result in actual lost earnings is a compensable harm.

## I.     The Court should grant BGC summary judgment on Plaintiff's FCRA § 1681e(b) claim.

### A.     BGC did not negligently violate FCRA § 1681e(b).

It is well-established that the FCRA is not a strict liability statute. It is

***Plaintiff's burden*** to prove that BGC's procedures are unreasonable. *Johnson v.*

*Equifax, Inc.*, 510 F. Supp. 2d 638, 647 (S.D. Ala. 2007). He cannot. BGC couples

sophisticated system-level matching, including a tool designed to ensure that errors

never repeat, with secondary review by employers to ensure accuracy. *See* BGC's

Mot. at 4-5. The FCRA does not require error-free reports—it requires reasonable

procedures. *Johnson*, 510 F. Supp. 2d at 646. The evidence in this case details the

many ways in which BGC ensures maximum possible accuracy.[1] Each of

Plaintiff's suggested changes to BGC's procedures is a red herring.

First, Plaintiff argues that BGC failed to match tertiary information in the

public record about Plaintiff's alias, race, and city of residence. Opp. at 7-8. The

evidence proves why race is not a reliable metric. Kessler Dec. ¶ 32; Kessler Dep.

---

[1] Plaintiff misleadingly suggests that BGC's error rate is proof of its failure. Opp. at 11 & n.7. Plaintiff's math is wrong:  in particular, it incorrectly assumes that every dispute that BGC receives is resolved in the consumer's favor when in reality many result in a finding that BGC produced an accurate report. As BGC's President testified, BGC's error rate is strikingly low—evidence of the success of its procedures. Kessler Dep. at 104:18 – 105:14; 115:17-22.

at 97:23 – 98:14. Likewise, it strains logic to imagine how a system could compare unreliable public record entries for "alias." And, BGC already uses this secondary data in the second step of its robust two-step process, which invites employer input to exclude obviously non-matching records based on that data. BGC's Mot. at 4-5.

Second, Plaintiff argues that BGC should match records based on Social Security number. Public records indices do not contain SSNs and courts do not readily divulge them. Plaintiff's suggestion is that BGC make *tens of thousands* of calls to county clerks daily to ask whether the file contains an SSN and, if so, whether they are willing to confirm that the SSN on file is a match to the consumer. The issue is ***not*** (as Plaintiff suggests) BGC's financial bottom line, it's the true impossibility of that approach. Courts, which make records indices available directly to the public precisely to avoid the strain of dealing with people by telephone for every records request, would stop answering BGC's calls at such a volume, ironically creating more delays in getting people hired into the jobs they seek. BGC's Mot. at 16-17. Plaintiff's suggestion is patently unreasonable and is not driven by any language in the FCRA or any case law interpreting it.[2]

---

[2] Plaintiff's argument is based on the fact that BGC checks SSNs when resolving disputes under FCRA § 1681i. Courts have unambiguously established, however, that what is reasonable in a dispute context (where volume is low) is not the guide for what is reasonable in preparing reports. *Lee v. Security Check, LLC*, No. 3:09-cv-421-J-12TEM, 2010 WL 3075673, at *11 (M.D. Fla. Aug. 5, 2010).

Plaintiff also incorrectly suggests that BGC's county-level search product (as opposed to the database search performed about Plaintiff) would have resulted in a more accurate report. Opp. at 9-10. The evidence disproves his claim: BGC's county search product does not match based on SSN and would have revealed exactly the same records about Plaintiff. Kessler Dep. at 98:15 – 99:6.

Plaintiff's arguments reduce to a shotgun approach: he believes that if other information exists in the file, it must necessarily be integrated into BGC's matching procedures, no matter what the FCRA requires, what courts have said, or what business limitations allow. The FCRA requires *reasonable procedures*; the evidence proves that BGC's procedures meet and exceed that threshold.

**B.     BGC did not willfully violate FCRA § 1681e(b).**

Even assuming, *arguendo*, that a jury could find that BGC violated § 1681e(b), it did not do so willfully. A CRA can avoid a claim for willfulness where it makes an objectively reasonable interpretation of a less-than-clear provision of the FCRA without guidance to the contrary from a Court of Appeals. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).

The FCRA does not define "reasonable procedures" or "maximum possible accuracy" in the context of which identifiers a CRA must match when preparing reports. *See* 15 U.S.C. § 1681e(b). No Court of Appeals has ever addressed the

4

question of whether BGC's matching procedures, which meet or exceed industry standards, are compliant. Kessler Dec. ¶ 33; Kessler Dep. at 97:8-22.

Tellingly, while urging that the Courts of Appeals have spoken to BGC's obligations under § 1681e(b), Plaintiff merely strings case citations together without explaining how any is guiding. Indeed, none is. For example, Plaintiff cites *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991), which dealt with the question of how a credit bureau reports information to contextualize credit entries, not matching. Likewise, in *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 826 (11th Cir. 2009) the Eleventh Circuit *affirmed* summary judgment in favor of a CRA on a § 1681e(b) claim; the issue was not matching procedures.[3]

Perhaps more importantly, each of Plaintiff's supposed authorities concerns § 1681e(b) compliance in *credit* reporting, not criminal record reporting. The distinction is important: credit reporting involves substantially different identifiers than public record matching because nearly all credit records contain SSNs. No court has ever held that a CRA's procedures for reporting criminal records are unreasonable because they do not compare SSNs. And, notably, none of Plaintiff's cited FTC actions regarding so-called mixed files contain any mention of SSN matching. *See, e.g.*, *FTC v. TRW, Inc.*, 784 F. Supp. 361 (N.D. Tex. 1991).

---

[3] Plaintiff's two other cited cases are similarly bereft of guidance. *See Cortez v. TransUnion LLC*, 617 F.3d 688 (3d Cir. 2010) (about reporting OFAC results, not matching); *Guimond v. TransUnion Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995) (about truly incorrect information, not matching).

In the face of an unclear statute and a paucity of judicial guidance, BGC made and implemented a reasonable interpretation of what constitutes "reasonable procedures": matching the most consistent and reliable identifiers on records, combined with employer input, in light of operational realities and industry standard. As a matter of law, BGC did not willfully violate FCRA § 1681e(b).

## II.   The Court should grant BGC summary judgment on Plaintiff's FCRA § 1681k claim.

The evidence proves that BGC sent Plaintiff an FCRA § 1681k letter at the time that it prepared his report. Faced with that evidence, Plaintiff now argues, for the first time, that BGC violated FCRA § 1681k(a)(1) by failing to provide a letter to Plaintiff at literally the exact same moment that it provided the report to Dart.

Plaintiff's timing argument is a new theory of liability. The allegation in the Complaint is *not* that BGC failed to provide contemporaneous notice. Instead, Plaintiff alleged that BGC failed outright to send the notice. Compl. ¶ 31(c) (BGC "fail[ed] to provide notice to Plaintiff that public record information was being reported for employment purposes in violation of 15 U.S.C § 1681k"). That is the claim on which BGC took discovery and that is the claim on which BGC moved for summary judgment.

The Court should reject Plaintiff's eleventh hour change in theory. *Welch v. Delta Air Lines, Inc.*, 978 F. Supp. 1133, 1138 (N.D. Ga. 1997) ("Whatever the

reason, Plaintiff cannot change its theory of the case (in an effort to avoid summary judgment) *after* Defendant moves for summary judgment."); *Hegre v. Alberto-Culver USA, Inc.*, 485 F. Supp. 2d 1367, 1379 (S.D. Ga. 2007) (rejecting plaintiff's attempts to recast a claim in a summary judgment opposition brief to assert a "fundamentally new claim"). There is no dispute as to the actual claim pled: BGC sent the required notice and Plaintiff received it. BGC's Mot. at 18-20.

Regardless, Plaintiff's new theory fails. First, Plaintiff's argument that BGC is liable because it did not send him a letter until the day after it sent Dart the report is unsupported by the evidence: Craig Kessler's testimony, cited in Plaintiff's brief, is that a letter makes into the mail on the same business day if it is printed before 5:00 PM; Plaintiff's was. Kessler Dep. at 51:10-17. Second, the statute does not require simultaneous transmission. It requires notice be sent "at the time" a CRA provides the report. No court has ever interpreted that phrase to require that the notice be provided at the exact same second and, to the contrary, the FTC has recognized as recently as 2011 that first class mail is compliant, which is necessarily not simultaneous. Fed. Trade Comm'n, *40 Years of Experience with the Fair Credit Reporting Act* 81 (2011). That guidance, particularly knowing that CRAs provided electronic reports in 2011, disproves the idea that § 1681k(a)(1)

requires simultaneous notice. A jury could not find that BGC violated § 1681k or that it did so willfully.[4]

## III. The Court should grant BGC summary judgment on the claim that BGC negligently violated any provision of the FCRA.

The Court should also grant BGC summary judgment on each of Plaintiff's claims for negligent violations of the FCRA because Plaintiff lacks sufficient evidence to prove any actual damages. Plaintiff claims to seek three categories of damages:  (1) emotional distress, (2) reputational harm, and (3) lost wages.

Plaintiff's defense of his emotional damages misses the substance of BGC's argument. He dwells on the unremarkable position that an FCRA claim *can* be based on proven emotional distress damages. Eleventh Circuit courts, however, hold plaintiffs to a higher evidentiary standard than their own testimony of harms they supposedly suffered. Instead, courts require plaintiffs to substantiate conclusory testimony of emotional distress with third-party evidence. BGC's Mot. at 22-24 (collecting cases). Plaintiff has none.

Plaintiff incorrectly insists that his emotional harm is "corroborated" by testimony from Dart. Opp. at 25. The testimony cited, however, only affirms that the records on Plaintiff's original report were disqualifying under Dart's hiring

---

[4] The fact that BGC's mailing process is a standard operating procedure is immaterial – the standard is only whether BGC's approach is an objectively reasonable reading of the statute. *Safeco*, 551 U.S. at 47.

criteria—it says nothing of Plaintiff's damages. O'Neill Dep. at 37:13-20; 38:2-15. Furthermore, Plaintiff's citation to *Jordan v. Equifax Info. Servs., LLC*, 410 F. Supp. 2d 1349 (N.D. Ga. 2006) only proves BGC's point. In *Jordan*, the plaintiff supplemented his own testimony of emotional distress with testimony from a loan servicing officer who had *witnessed the distress*. This is precisely the type of evidence that Plaintiff lacks. Under Eleventh Circuit law, that failure precludes Plaintiff from taking a claim for emotional distress damages to the jury.

Plaintiff also argues that he suffered damage to his reputation. These damages, however, are part and parcel with Plaintiff's claims for emotional harm and fail for the same reason—Plaintiff lacks any corroboration. *See generally Riley v. Equifax Credit Info. Servs.*, 194 F. Supp. 2d 1239, 1244 (S.D. Ala. 2002) (evidence of "humiliation or mental distress . . . must be supported by something more than the plaintiff's own conclusory allegations."). Here, Plaintiff has *only* his own conclusions of reputational harm, which amount to a half-sentence in his initial disclosures. Under oath and after repeated questioning, Plaintiff never once mentioned reputational harm as a category for which he seeks damages. *See* Smith Dep. at 84:11-16; 89:3-5.[5] His evidentiary showing (an offhand mention in his initial disclosures) is insufficient to bring a claim for reputational damages to a

---

[5] Plaintiff similarly omitted any mention of damage to his reputation when responding to BGC's interrogatory asking him to catalogue every injury or damage he allegedly suffered as a result of BGC's actions.

jury. *Dashtpeyma v. Liberty Ins. Corp.*, No. 1:11-cv-3809-JEC, 2013 WL 5432682, at *4 (N.D. Ga. Sept. 27, 2013) (Carnes, J.) (summary judgment is warranted where a party has no evidence to prove a claim).

Finally, Plaintiff suffered no compensable lost wages. Dart hired him. Bergan Dec. ¶ 21. His notion of a "delay"[6] in employment might make sense if it caused him to miss out on earning more than he could have (*i.e.*, he suffered a loss), but that isn't the case: he was accepted into and completed the driver training program before turning down Dart's offer of permanent employment. *Id.* ¶¶ 19-27. He suffered no loss other than his own choice to reject employment. Plaintiff has cited no case to support the notion that a *de minimis* delay in employment, which is then followed by receiving all expected wages, is a compensable harm. Further, Plaintiff's delay was inevitable because other pieces of his application were still in process at the time that BGC revised the report. *Id.* ¶¶ 13-15.

Plaintiff suffered no out-of-pocket loss and he has no evidence of any other damages. BGC is entitled to summary judgment on Plaintiff's claims that BGC negligently violated the FCRA.

---

[6] Plaintiff speculates that his employment was delayed 13 days. Plaintiff used the difference between the date on which he applied to Dart (September 12) and the date on which he began work (September 25). His math is contradicted by the evidence, which shows that BGC provided a revised report to Dart on September 18 and that Dart cleared Plaintiff for employment on September 20. Bergan Dec. ¶¶ 13-17. Plaintiff has no evidence to show that he would have started work sooner if not for BGC's report.

Respectfully submitted, this 21st day of May, 2014.

      /s/  Ross D. Andre

KILPATRICK TOWNSEND &
  STOCKTON LLP
1100 Peachtree St. NE
Suite 2800
Atlanta, GA  30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

Cindy D. Hanson (GA Bar No. 323920)
John P. Jett (GA Bar No. 827033)
Ross D. Andre (GA Bar No. 280210)
chanson@kilpatricktownsend.com
jjett@kilpatricktownsend.com
randre@kilpatricktownsend.com

*Counsel for Defendant E-BackgroundChecks.com*

11

## **LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in 14 point Times New Roman font in accordance with Local Rule 5.1(C).

Dated: May 21, 2014.

   /s/  Ross D. Andre
Ross D. Andre

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 21, 2014, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system which will automatically send

email notification of such filing to all attorneys of record:

Gregory Joseph Gorski                    James Marvin Feagle
FRANCIS & MAILMAN, P.C.             Skaar & Feagle, LLP-Decatur
19th Floor, Land Title Building          Suite 204
100 South Broad Street                   108 East Pone de Leon Ave.
Philadelphia, PA  19110                  Decatur, GA  30030

                                         Justin T. Holcombe
                                         Skaar & Feagle, LLP
                                         331 Washington Ave.
                                         Marietta, GA 30060


                                         __ /s/  Ross D. Andre_____
                                         Ross D. Andre

                                         *Counsel for E-BackgroundChecks.com*

13