IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TONY SMITH,<br><br>    Plaintiff,<br><br>v.<br><br>E-BACKGROUNDCHECKS.COM, INC.,<br><br>    Defendant. | CIVIL ACTION NO.<br>1:13-cv-02658-JEC-RGV |

**DEFENDANT'S RESPONSES TO PLAINTIFF TONY SMITH'S COUNTER-STATEMENT OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In accordance with Local Rule 56.1, Defendant E-Backgroundchecks.com, Inc. ("BGC") hereby responds to Plaintiff Tony Smith's Counter-Statement of Material Facts in Opposition to Defendant E-Backgroundchecks.com, Inc.'s Motion for Summary Judgment (Dkt. No. 47-2) as follows. For the Court's convenience, Plaintiff's materials are in boldface type:

**A.    BGC Prepared And Sold A Consumer Report About Plaintiff Containing Derogatory, Inaccurate and Incomplete Criminal Record Information That Belonged To Another Person.**

**1.    BGC sells national background checks ("US OneSEARCH")[1] using an entirely automated process where there is no human involvement**

---

[1] **BGC does not dispute that it is a consumer reporting agency or that the criminal background check that it sold to Dart Transportation about Plaintiff is a consumer report as both terms are defined under the FCRA.** *See* **Ex. 1, Kessler Dep., at 90:3-10.**

**at all in the preparation or sale of the background checks and the computer programmed to prepare such reports will provide results instantaneously.** *See* **Ex. 1, Kessler Dep., at 39:14-40:20.**[2]

**RESPONSE:** BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate. BGC concedes that the Court can properly consider the evidence cited in footnote 1 for purposes of BGC's summary judgment motion. BGC does not dispute the statement in footnote 2.

**2.     The information used for the reports comes from a query of a BGC database that houses only partial summary data about criminal records (not the complete criminal record for any crime) which BGC obtains from courts that sell summary data, employees who search online criminal docket for select information or which BGC buys from a vendor who uses a similar process.** *See id.* **at 21:2 - 28:13.**

**RESPONSE:** BGC concedes that the Court can properly consider the evidence cited in the foregoing statement for purposes of BGC's summary judgment motion.

**3.     BGC sells its national background check product for $13.95.** *See id.***, at 36:2- 37:11.**

---

[2] **The full transcript of the deposition of Craig Kessler was previously filed by BGC in connection with filing its motion for summary judgment.**

**RESPONSE:** BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

**4.** BGC's President, Craig Kessler, admits that the national background check BGC sold about Plaintiff in connection with his application for employment at Dart Transportation contained criminal records that did not belong to Plaintiff:

> Q. Do you agree that the criminal records that appear on this report do not belong to the plaintiff in this case?
>
> A. Yes.

*See* **Ex. 1, Kessler Dep., at 73:8-11.**

**RESPONSE:** BGC concedes that the Court can properly consider the evidence cited in the foregoing statement for purposes of BGC's summary judgment motion.

**5.** Additional information that can be obtained from complete summary data associated with the criminal records that could have better informed both BGC and Dart about the identity of the true perpetrator that was not incorporated into the report and not considered in BGC's matching criteria, including: any alias for the perpetrator; the race of the perpetrator; the name of the perpetrator's defense attorney; the name of perpetrator's parole officer; the name of the arresting officer; and the city of residence of the perpetrator. *See id.*, **at 80:16 – 81:20.**

**RESPONSE:** BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

US2008 5589819 1

**6.     In this case, Plaintiff's full name "Tony Willie Smith" is a non-match to the alias of the perpetrator "Tony F. Smith." Plaintiff race (African American) is a non-match to the race of the perpetrator (Asian/Pacific Islander). Plaintiff's city of residence (Powder Spring, GA) is a non-match to street address and city of residence of the perpetrator (Philadelphia, PA).** *See* **Exs. 8A-8C, Court Summaries From Pennsylvania Courts;[3] Exs. 9A & 9B, Criminal Complaints.**

**RESPONSE:** BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate. BGC does not dispute the statement in footnote 3.

**7.     BGC further issued the consumer report to Dart before even beginning to prepare correspondence to Plaintiff advising him that it intended to produce a report to Dart containing derogatory public record information:**

> **Q.     So the transmission to begin the process of preparing the letter only occurs once the report has been delivered to the end user, correct?**
>
> **A.     Yes.**

*See id.* **50:16-19.**

**RESPONSE:** BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

---

[3]  **Docket summaries from the Pennsylvania Courts can be obtained online at http://ujsportal.pacourts.us/ DocketSheets.**

8. Based on the time of day that the report was sent to Dart (4:51PM), the letter that BGC ultimately sent to Plaintiff via U.S. regular mail would not have been sent until the following day based upon BGC's procedures. *See* **Decl. of Craig Kessler, at Ex. A[4]; Ex. 1, Kessler Dep, at 50:23 – 52:8.**

RESPONSE: BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate. BGC does not dispute the statement in footnote 4.

9. **BGC's procedures thus assure that consumers will not receive notice that a report with criminal record information on it has been sold about them until well after employers have already received and reviewed the report:**

> Q. Do you agree that based on the procedures we just discussed for generating the letter that we're discussing in Kessler 1 that the end user is going to receive the subject report before the consumer receives this kind of letter in the mail?
>
> A. Yes.

*See id.* **at 53:1-6.**

RESPONSE: BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

---

[4] **The Declaration of Craig Kessler was previously filed by BGC in support of its motion for summary judgment.**

B.  **BGC Knows That Its Procedures For Matching Criminal Record Information To Consumers With Relatively Common Names Will Produce Errors, But Does Nothing To Prevent This Result.**

10.  There are over 33,000 individuals residing in the United States with the name Tony Smith. Given the number of individuals who have the same name, common sense dictates that numerous people with this name will have the same date of birth as well. *See* Ex. 3, Data from PeopleSmart.com; *See* Ex. 1, Kessler Dep., at 67:5-7; Ex. 4, Deposition of Peggy O'Neill, ("O'Neill Dep."), at 37:21-25.

**RESPONSE:**  BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate. BGC also disputes the facts in the foregoing statement on the grounds that the cited evidence ("Data from PeopleSmart.com") is not admissible.

11.  **BGC knows that its search algorithms for its nationwide search product cannot distinguish between people who have the same name and date of birth:**

> Q.  Do you agree based on the matching logic you described for the generation of reports that the computer system cannot differentiate between people who have the same name and the same date of birth?
>
> * * *
>
> A.  I'm sure under that scenario that's a possibility.
>
> Q.  Meaning that the computer system can't differentiate between people who have the same name and the same date of birth?
>
> A.  Correct.

*See* **Ex. 1, Kessler Dep., at 67:13 – 68:3.**

**RESPONSE:** BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

**12. Moreover, BGC knows that social security number matching will unambiguously differentiate consumers and even employs social security number matching after a consumer disputes about inaccurate criminal records appearing on his or her report.** *See id.* **at 68:4-16; 85:12-86:2.**

**RESPONSE:** BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

**13. BGC further know that social security number matching is so effective at resolving ambiguities among consumers that its own president could not identify any other procedures that it followed to differentiate consumers when responding to a disputes.** *See id. at* **62:24- 63:7.**

**RESPONSE:** BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

**14. The Pennsylvania court system even warns against using summary data about criminal convictions, which does not include the social security number of the perpetrator, in the manner that BGC uses the information stating, "Court Summary Report information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police."** *See* **Ex. 2, Court Summary.**

**RESPONSE:** BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

**15.     BGC further has the means to confirm social security numbers on criminal records it desires to include in a report by making a simple and short telephone call to a court and/or send individuals in person to a specific court to obtain additional information about the perpetrator.** *See* **58:9-14; 32:16 – 34:20.**

**RESPONSE:** BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

**16.     BGC even offers a separate search product ("county search") to employers in which BGC will send an individual to a courthouse for a $12.00 retail price.** *See id.*

**RESPONSE:** BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

**17.     BGC, however, never employs these procedures to confirm the accuracy of a criminal record unless a consumer disputes after the report is already sold or an employer pays for a county report after the report is sold.** *See id.* **at 92:2 – 93:12**

**RESPONSE:**  BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

18. Even BGC's own marketing materials proclaim that "a county criminal search is more accurate and complete" than its national background check product.  *See id.* **at 90:20 – 91:12.**

**RESPONSE:**  BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

19. BGC marketing materials remarkably even admit that its national background check compromises accuracy:

> Q. Okay. I'm going to read you another paragraph from the website that is under the section, Understanding Reports, and the paragraph reads, "To provide you with the best instant access to relevant criminal records, BackgroundChecks.com will preselect criminal records that exactly match your search criteria and present them to you above. However, to be as comprehensive as possible, our database also returns records that are not necessarily a 100 percent match but contain sufficient amounts of matching between elements to be potentially relevant to your search." Do you agree with that statement?
>
> A. Yes.

*See id.* **at 94:14 – 95:3.**

**RESPONSE:**  BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

C.   **Plaintiff Claims Damages for Delayed Employment, Harm to Reputation and Emotional Distress.**

**20.**   From the time BGC sold the erroneous background check about Plaintiff on September 12, 2014, Plaintiff did not begin work until September 25, 2014, a delay of 13 days. *See* **Bergan Decl., at ¶ 21; Ex. 5, Deposition of Tony Smith ("Smith Dep."), at 48:22 – 49:25; 65:18-22.**[5]

**RESPONSE:**  BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

**21.   Dart's recruiter who handled Plaintiff's application explained at her deposition that Dart will not pursue any application and does not put any time into a person's application once a background check is returned with criminal records.**  *See* **Ex. 4, O'Neill Dep., at 20:5 – 21:8; 36:16 - 37:12;**

**RESPONSE:**  BGC concedes that the Court can properly consider the evidence cited in the foregoing statement for purposes of BGC's summary judgment motion.

**22.   Dart's recruiter and the manager of the department where Plaintiff applied for a job further confirmed that Plaintiff was denied**

---

[5]   **The full transcript of the deposition of Tony Smith was previously filed by BGC in connection with filing its motion for summary judgment.**

**employment specifically because of the BGC report.** *See id.* **at 21:1 – 21:8; Ex. 6, Deposition of Randy Lucklow, ("Lucklow Dep."), at 7:18-20; 16:20 – 17:4;**

**RESPONSE:** BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

**23.   BGC failings in providing notice to Plaintiff of the erroneous background check contributed to the delay of nearly a week because Plaintiff did not receive the report himself until five days after BGC already sold the report to Dart.** *See* **Ex. 5, Smith Dep., at 50:22 – 51:6.**

**RESPONSE:** BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

**24.   Paystubs produced by BGC reflect that an approximate two week delay in employment cost Plaintiff between $243 and $426 per week.** *See id*, **at Ex. A (document Bates labelled DART23 – DART33); Ex. 6, Lucklow Dep., at 21:21-25.**

**RESPONSE:** BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

**25.   Plaintiff further suffered harm to his reputation by being erroneously accused of being a criminal and suffered corresponding emotional distress from being called a criminal and from the prospect of being denied a job that was very important to Plaintiff.** *See* **Ex. 5, Smith Dep., at 48:22 – 49:15; 52:10-15.**

**RESPONSE:**   BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

**26.     By way of example, Plaintiff described the treatment he received from the Dart recruiter after the report was sold which underscores the reputational damage he suffered and emotional distress he experienced:**

> **I tried to tell the recruiter that it wasn't me, and she didn't believe me, she called me a liar, said that I should have just been honest, I should have just been upfront.**

*See id.* **at 52:10-13.**

**RESPONSE:**   BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

**27.     Plaintiff further wasted time trying to exonerate himself by having to buy other background checks on his own and even trying to call the court.**  *See id.* **at 52:18 - 53:17.**

**RESPONSE:**   BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

**28.     When Plaintiff contacted BGC to dispute, he repeatedly got an answering machine thus exacerbating his anxiety that he was going to lose the job opportunity.**  *See id.* **at 56:4-12.**

**RESPONSE:** BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

**29.    Plaintiff further contacted BGC on a daily basis because of his anxiety about losing the job opportunity.** *See id*. **at 60:4-9.**

**RESPONSE:** BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

**30.    Plaintiff further describes the humiliation and emotional distress he was placed under:**

> **A.    It was a lot of stuff that happened. I couldn't sleep. I was waking up and checking emails, wasting a lot of time -- well, not wasting a lot of time, but I did a lot of research. I did a lot of research.  I was embarrassed. The lady told me I couldn't work, you know, she was basically calling me a liar over the phone and then told me she was sorry, but I just wanted to -- just to go back to work.  I had just paid money to get my CDLs and I always – never had a problem, never had a problem getting a job in the past, but it's like when I decide to go with Dart or I get my CDLs and I decided to go with a trucking company, my background was coming back incorrect for some reason.**
>
> **Q    Okay.  You said you couldn't sleep.**
>
> **A    Yeah, I had to wake up -- I was waking up every day checking emails, trying to call, calling, I called Pittsburgh maybe so many times, the clerk of courts. I talked to so many people every day. This is an everyday process. I talked to people in Pennsylvania trying to get -- trying to get**

> **stuff resolved, saying what can I do, making sure that this person wasn't me, getting background checks.**

**Q**    **The waking up when you couldn't sleep, is there anybody who witnessed that? Did your fiancée wake up too?**

**A**    **Yes.  See, I wasn't really sleeping in the bed because I couldn't tell her that, you know, I wasn't making any money, and she just couldn't understand what was going on.**

**\* \* \***

**Q**    **What were you embarrassed about?**

**A**    **I mean, just, you know, for someone -- someone to call you a liar and -- you know, because when you apply to jobs, they do a -- well, especially in the trucking industry, they say, "Hey, just let me know upfront if you have any background checks of anything, because if you do, you're wasting my time," you know, so it's some kind of process they do and they actually pay for a background check. And when a background check come back incorrect, you know, they kind of get angry and say, "Hey, you wasted my time. You know, I wanted you to be honest and be upfront and, you know, you still lied to me." And, you know, so it's hard trying to get somebody to tell -- it's hard trying to get someone to tell them that you're not a liar and, "Hey, I'm being honest," and she just thought I was just straight lying.**

**\* \* \***

**Q**    **Did you have any physical symptoms from that embarrassment?**

**A**    **I mean, I really didn't -- I really didn't feel like doing nothing. I really wanted to just go back to work, and I kind**

> **of stayed home. So I really, you know, stayed home, sat in the bed, made phone calls every day.**

*See id.* **at 79:16 - 82:19; 83:5 – 84:4.**

<u>**RESPONSE:**</u>  BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

**31.    Dart's recruiter even agrees that Plaintiff concern about losing the job opportunity was expected and the erroneous criminal records on the BGC report placed Plaintiff in a negative light in the eyes of Dart.** *See* **Ex. 4, O'Neill Dep., at 37:13-20; 38:2-15.**

<u>**RESPONSE:**</u>  BGC disputes the facts in the foregoing statement on the ground that the cited evidence does not support the purported fact, which is, correspondingly, incomplete and inaccurate.

Respectfully submitted, this 21st day of May, 2014.

| | |
|---|---|
| KILPATRICK TOWNSEND & <br>    STOCKTON LLP <br> 1100 Peachtree St. NE <br> Suite 2800 <br> Atlanta, GA  30309 <br> Telephone:  (404) 815-6500 <br> Facsimile:   (404) 815-6555 | /s/  Ross D. Andre <br> Cindy D. Hanson (GA Bar No. 323920) <br> John P. Jett (GA Bar No. 827033) <br> Ross D. Andre (GA Bar No. 280210) <br> chanson@kilpatricktownsend.com <br> jjett@kilpatricktownsend.com <br> randre@kilpatricktownsend.com |

*Counsel for Defendant E-BackgroundChecks.com*

## **LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in 14 point Times New Roman font in accordance with Local Rule 5.1(C).

Dated: May 21, 2014.

                                                /s/  Ross D. Andre
                                               Ross D. Andre

# CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record:

Gregory Joseph Gorski
FRANCIS & MAILMAN, P.C.
19th Floor, Land Title Building
100 South Broad Street
Philadelphia, PA  19110

James Marvin Feagle
Skaar & Feagle, LLP-Decatur
Suite 204
108 East Pone de Leon Ave.
Decatur, GA  30030

Justin T. Holcombe
Skaar & Feagle, LLP
331 Washington Ave.
Marietta, GA 30060

   /s/  Ross D. Andre
Ross D. Andre

*Counsel for E-BackgroundChecks.com*