## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TONY SMITH,

      Plaintiff,

v.

E-BACKGROUNDCHECKS.COM, INC.,

      Defendant.

CIVIL ACTION NO.

1:13-cv-02658-WBH-RGV

## MAGISTRATE JUDGE'S NON-FINAL REPORT AND RECOMMENDATION

Plaintiff Tony Smith ("plaintiff"), brings this action against defendant E-BackgroundChecks.com, Inc. ("BGC"), alleging BGC violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* [Doc. 1].[1]  BGC seeks summary judgment, [Doc. 35], which plaintiff opposes, [Doc. 47].  For the reasons set forth herein, it is **RECOMMENDED** that BGC's motion for summary judgment, [Doc. 35], be **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Plaintiff initially brought this action in the Eastern District of Pennsylvania, alleging that defendants BGC and Sterling Infosystems, Inc. ("Sterling"), violated the FCRA.  See [Doc. 1].  On August 8, 2013, the Pennsylvania district court severed plaintiff's claims against BGC and transferred those claims to this Court.  See [Doc. 6].  Therefore, plaintiff's claims asserted against BGC are the only claims pending before this Court.  The listed document and page numbers in citations to the record in this Report and Recommendation refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

## I. FACTS AND PROCEDURAL HISTORY

### A. __Preliminary Statement__

In compliance with Local Rule 56.1B(1), BGC, as movant, filed a statement of undisputed material facts, [Doc. 35-5], to which plaintiff has responded, [Doc. 47-1]. Plaintiff also submitted his own statement of material facts, [Doc. 47-2], to which BGC has responded, [Doc. 52-1]. The Court accepts as undisputed those facts which the parties admit or have failed to properly dispute or deny, see [Doc. 47-1, admitting or failing to properly dispute ¶¶ 1-4, 6-7, 10-13, 16-22, 28-32, 34-35, 37, 39-40, 43-44, and parts of ¶¶ 8-9, 14 -15, 23-24, 26-27, 36, and 38 of BGC's statement, Doc. 35-5; Doc. 52-1, admitting or failing to properly dispute ¶¶ 1-4, 15-17, 21, 29-31, and parts of ¶¶ 7-9, 11-13, 18-20, and 22-28 of plaintiff's statement, Doc. 47-2].[2]

---

[2] Plaintiff objects to certain statements of undisputed material facts set forth by BGC as inadmissible hearsay. See [Doc. 47-1 ¶¶ 36, 39-40]. While the general rule is that "'inadmissible hearsay cannot be considered on a motion for summary judgment,'" a court may "' consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form.'" Sklar v. Clough, Civil Action No. 1:06-CV-0627-JOF, 2007 WL 2049698, at *2 (N.D. Ga. July 6, 2007) (quoting Macuba v. Deboer, 193 F.3d 1316, 1322-23 (11th Cir. 1999)); see also Lentz v. Hospitality Staffing Solutions, LLC, No. 1:06-cv-1893-WSD, 2008 WL 269607, at *3 (N.D. Ga. Jan. 28, 2008). The Court concludes that it can properly consider the alleged hearsay evidence in this case because the statements could be presented in an admissible form at trial. McMillian v. Johnson, 88 F.3d 1573, 1584 (11th Cir. 1996). Plaintiff also objects to certain statements as calling for an expert opinion, but being offered by a witness who has not been properly designated as an expert. See [Doc. 47-1 ¶¶ 5, 33-35]. However, the declarant's position as President of BGC raises an inference of personal knowledge and plaintiff has "offered no evidence that rebuts the inference

Additionally, "for purposes of this motion, when facts are in dispute the court must assume that any admissible evidence proffered by the plaintiff is true, and must also draw all reasonable inferences from the evidence in the plaintiff's favor." Smith v. Pefanis, 652 F. Supp. 2d 1308, 1317 n.5 (N.D. Ga. 2009), adopted at 1316 (citations and internal marks omitted); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).   Therefore, the Court will discuss the material disputed facts in addressing the merits of the motion. See [Doc. 47-2 ¶¶ 5-6, 10]; see also [Doc. 35-5 ¶¶ 5, 25, 33, 41-42].   The Court, however, has omitted certain facts which are not material to the issues presented in the pending motion, were stated as an issue or legal conclusion, or were not supported by citations to evidence. See LR. 56.1B(1), (2)a(2), NDGa.

---

of personal knowledge flowing from [the declarant's] position." Edwards v. Toys "R" Us, 527 F. Supp. 2d 1197, 1201-02 (C.D. Cal. 2007).  While it is true that since BGC has not offered its President as an expert pursuant to Rule 702 of the Federal Rules of Evidence, "he may not opine about the custom and practice in the . . . industry," he may, however, "proffer testimony as the opinion of a lay witness pursuant to [Rule 701]," with limitations, and the "fact that the lay opinion testimony bears on the ultimate issue in the case does not render it inadmissible." Saye v. Old Hill Partners, Inc., 478 F. Supp. 2d 248, 272 (D. Conn. 2007) (citations and internal marks omitted).  The statements at issue that relate to BGC and its practices are within the President's personal knowledge, and his declaration will only be considered by the Court to the extent the statements are based on his personal knowledge as it pertains to BGC's practices, but not as to the industry in general. Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 248 F.R.D. 298, 306 (N.D. Ga. 2008); see also Didzbalis v. Sheridan Transp. Co., No. 00 Civ. 4329(JCF), 2002 WL 31619071, at *1 (S.D.N.Y. Nov. 19, 2002) (citations omitted) ("Generally, expert testimony is necessary for the introduction of custom and practice evidence").

**B.**     <u>Statement of Facts</u>

On September 11, 2012, plaintiff applied for a job as a truck driver with Dart Transit Company ("Dart"), through Dart's student driver training program.  [Doc. 36 (Bergan Decl.) ¶¶ 8-9].   On the following day, Dart ordered a criminal background check on plaintiff from BGC.  [<u>Id.</u> ¶ 10].  In particular, Dart ordered a US OneSEARCH, which is an automated computer search of BGC's nationwide criminal database programmed to return results instantaneously.  [Doc. 43 (Kessler Dep.) at 35-36, 39-40].   US OneSEARCH reports are prepared by matching identifying information provided by the end-users to identifiers contained within the public criminal records in BGC's database,[3] [Doc. 37 (Kessler Decl.) ¶ 6], and BGC's practice is to report criminal records that match a consumer's full name and date of birth,[4] [<u>id.</u> ¶ 33; Doc. 43 at 97].

---

[3] The criminal records in BGC's database contain only a partial summary data regarding the record, and BGC obtains these records in a number of ways, including from courts that sell summary data, employees who search online criminal dockets for select information, or from a vendor who uses a similar process.  [Doc. 43 at 21-28].  BGC sells the US OneSEARCH product for $13.95, and in some cases, for less. [<u>Id.</u> at 36-37].

[4] BGC's President, Craig Kessler ("Kessler"), averred that criminal records indexes vary between jurisdictions.   For example, Kessler stated that some jurisdictions omit middle names or birth dates while others may collect and report demographic data, including height, weight, and race.  [Doc. 37 ¶ 32; Doc. 43 at 95-96].   He also averred that public criminal records indexes do not include a consumer's social security number.  [Doc. 37 ¶ 32].  Kessler further explained that BGC does not match criminal records based on race because it believes race to be an

When Dart ordered the background check on plaintiff, BGC required Dart to supply plaintiff's full first name, middle name or middle initial, last name, and date of birth.  [Doc. 37 ¶ 8; Doc. 43 at 41].[5]  For plaintiff, Dart supplied "Tony Willie Smith," his date of birth, the state within which he works, and his social security number, though the social security number was not required.  [Doc. 37 ¶ 8; Doc. 43 at 70; Doc. 36-2 at 34].  Once Dart supplied plaintiff's identifying information and ordered the report, BGC's system gathered an initial set of matching records in a two-step process.  First, the system compared plaintiff's identifying information against entries in BGC's "Knockout" table, which is a database of records that BGC has determined through its dispute and reinvestigation process, conclusively do not belong to certain consumers.[6]  [Doc. 43 at 53-54, 102; Doc. 37 ¶¶ 9-11].  Because plaintiff had no records in the "Knockout" table, BGC then matched records in its

_____

unreliable identifier in that it can be inherently subjective, as well as the fact that many courts do not collect race data.  [Doc. 43 at 97-98].

[5] BGC's system only allows end-users to proceed without a middle name or middle initial if they check a box certifying that the consumer has no middle name.  [Doc. 43 at 41].  BGC also requires employers to provide the state in which the consumer will be working.  [Id. at 70].

[6] The "Knockout" table ensures that BGC does not report any record as a match to a consumer if that consumer has successfully disputed with BGC that a record is not associated with the consumer.  [Doc. 43 at 53-56, 102; Doc. 37 ¶ 11].  If the consumer matches any entry in the "Knockout" table, BGC then requires a social security number to complete the search.  [Doc. 43 at 54-55].

database that were a complete match to plaintiff's first name, last name, and date of birth, and that were not a mismatch to plaintiff's middle name.[7]  [Doc. 43 at 43-46; Doc. 37 ¶¶ 12-14].  BGC's system identified six criminal records matching plaintiff's first and last name and date of birth, and which did not contain any middle name.[8]  [Doc. 37 ¶ 15].

BGC returned these records to Dart in a two-step process, as well.  First, BGC provided Dart with a summary screen showing basic information about each of the matching records.[9]  [Doc. 43 at 102].  BGC's system then required Dart to indicate, based on its review of the summary records, whether any records did not match plaintiff.  [Doc. 37 ¶ 17].  Dart did not indicate that any of the records supplied by BGC were not a match to plaintiff and it therefore continued on to the second step of the process, which entailed BGC providing Dart with a detailed view of the criminal records that carried over from the previous screen.  [Id. ¶¶ 20-21].  Dart was

---

[7] BGC's system returned records that were either a middle name match or records that included no middle name and therefore did not mismatch with plaintiff. [Doc. 37 ¶ 12].

[8] Kessler testified that BGC's computer system does not differentiate between people with the same name and date of birth.  [Doc. 43 at 67-68].

[9] The summary screen for each matching record displays the individual's first name, last name, date of birth, address, data source, and, if available, basic demographic information such as height and weight and any photograph associated with the record.  [Doc. 43 at 102-03; Doc. 37 ¶ 16].

then able to review each record individually and was required to indicate whether each record would negatively affect plaintiff's employment. [Id. ¶ 22]. Following this step, BGC then completed and electronically returned the criminal background report to Dart at 4:51 p.m. on September 12, 2012. [Id. ¶¶ 23-25 & Ex. A (the Report)].

Because the report contained public criminal record information, BGC's system automatically generated a letter to plaintiff, advising him that BGC had reported public record information to Dart and enclosing a copy of the report, a summary of plaintiff's rights under the FCRA, and a dispute form. [Id. ¶¶ 26-29 & Ex. B (the Letter)]. The letter was dated September 12, 2012, and was mailed to plaintiff, which he admits he received at his home some time after BGC transmitted the report to Dart.[10] [Doc. 37 ¶¶ 26-29 & Ex. B; Doc. 39-2 (Pl.'s Dep.) at 50-51, 74-75].

Plaintiff contacted BGC on September 17, 2012, and disputed the contents of the report he had received from Dart. [Doc. 37 ¶ 30; Doc. 39-2 at 50-51,74-76]. Two

---

[10] Kessler testified that the public record information is transmitted to the end user, and that upon acceptance by the end user, the letter is generated. [Doc. 43 at 50]. He also explained that if the report was generated "sometime reasonably in advance of 5 o'clock," the letter would be collected and dropped off for mailing that same day, but any report generated after 5:00 p.m. would be mailed the following day. [Id. at 50-53]. Plaintiff testified that he did not receive the letter from BGC until after he had received a letter from Dart that included his background report and he had already called BGC to dispute the information contained in the report. See [Doc. 39-2 at 74-76]. Plaintiff testified that he could not recall exactly when he received the letter from BGC, but he thought it was towards the end of September. [Id.].

days later, on September 19, BGC issued a corrected report removing all of the previously reported criminal records provided on the September 12 report and showing that plaintiff had no matching criminal records.[11]  [Id. ¶ 31].   That same

_____

[11] Kessler admits that the September 12, 2012, national background check issued to Dart regarding plaintiff contained criminal records that were not associated with plaintiff.  [Doc. 43 at 73].  He also states that "[f]ewer than one in a thousand consumers about whom BGC has prepared a report contacts BGC to dispute an identity error" and that "[i]n many instances when a consumer does allege an identity mismatch, BGC determines that the information was a match."  [Doc. 37 ¶ 36].  In fact, he estimates that BGC prepares thousands of employment-purpose consumer reports per day using its US OneSEARCH product, but BGC receives, on average, only ten disputes per day.  [Id. ¶¶ 34-35].  BGC also offers a product that searches criminal records directly at their source at the time of the report (i.e., a "county search"), rather than just searching BGC's database, but this product utilizes the same matching identifiers as BGC's database and does not compare social security numbers and therefore, would have returned the same criminal records for plaintiff.  [Doc. 43 at 98-99].  Plaintiff, however, maintains that BGC's matching criteria should include additional information, such as any alias for the perpetrator, the name of the perpetrator's parole officer, the name of the arresting officer, and the city of residence of the perpetrator, and he points out that his full name of "Tony Willie Smith" was a non-match to the records provided in that his name did not match the alias of the perpetrator "Tony F. Smith," that his race was a non-match to the race of the perpetrator, and that his city of residence was likewise a non-match to the perpetrator.  See [Doc. 47-2 ¶¶ 5-6 (citing [Doc. 43 at 80-81; Docs. 47-14, through 47-18])].  Plaintiff also maintains that BGC has the means to confirm social security numbers on criminal records by calling the court directly or sending an individual to the court to obtain the additional information as it does during the dispute process or when a company supplements the report with a county search after the initial report has been sold.  [Id. ¶¶ 12-13, 15-17 (citing [Doc. 43 at 32-34, 58, 62-63, 68, 85-86, 92-93])].  Plaintiff further points out that BGC's website explains that an instant nationwide search "queries a database consisting of several sources to quickly check for any criminal-related records" and therefore "offers a wider scope," but that they are "often less detailed and not as current as a county search," which it refers to as "more accurate and complete" since a county search "updates as suspects are booked and court cases are filed."  [Doc. 43 at 90-91

day, BGC e-mailed a notice to Dart, advising Dart that it had updated plaintiff's criminal background report.[12]   [Doc. 36 ¶ 16; Doc. 36-2 at 43].   On September 20, 2012, Dart approved plaintiff to begin the training program, which he began on September 25.   [Doc. 36 ¶¶ 19, 21; Doc. 39-2 at 48-49, 65].[13]

On May 20, 2013, plaintiff filed the instant complaint against BGC, alleging BGC inaccurately reported his criminal history on his consumer report and that in September, 2012, he applied for and was denied employment with Dart due to the inaccurate information, which included convictions for possession of a controlled

_____

(internal marks omitted)]; see also [Doc. 47-2 ¶ 19 (citing [Doc. 43 at 94-95])].

[12] BGC maintains that as of September 19, 2012, Dart was continuing to evaluate other portions of plaintiff's application while awaiting the outcome of his dispute with BGC as evidenced by the fact that Dart contacted two of plaintiff's former employers for employment verification on September 17, and that on September 18, Dart updated plaintiff's status to reflect its receipt of the required verifications.   [Doc. 36 ¶¶ 13-15].   Plaintiff, however, disputes this assertion by pointing to the testimony of Dart's recruiter, Peggy O'Neill ("O'Neill"), who handled plaintiff's application and explained that Dart would not pursue any application or put any time into an individual's application once a background check returned with criminal records.   [Doc. 48-1 (O'Neill Dep.) at 20-21, 36-37].   O'Neill testified that once she saw plaintiff's negative background check, she denied his application and it placed him in a negative light in Dart's eyes.   [Id. at 21, 37-38].

[13] Plaintiff completed Dart's training program on December 5, 2012, earning $3,265.37 in wages, see [Doc. 36 ¶¶ 23-25, 28; Doc. 36-1 at 23; Doc. 39-2 at 68], and Dart subsequently offered plaintiff a permanent job as a truck driver for a Dart subsidiary, but plaintiff declined the offer, [Doc. 36 ¶¶ 26-27; Doc. 39-1 (Luckow Dep.) at 22].   Plaintiff asserts that the two-week delay from the time BGC delivered the September 12 report to Dart until the time he began the training program on September 25 cost him between $243 and $426 per week.   [Doc. 47-2 ¶ 24 (citing [Doc. 36-1 at 24-34; Doc. 39-1 at 21])].

9

substance by an unregistered person, carrying firearms without a license, and criminal conspiracy.  [Doc. 1 ¶¶ 7-12].  Plaintiff also alleges that he "received no notice from [BGC] in connection with the application that public record information was being reported about [him.]"  [Id. ¶ 13].  Plaintiff further asserts that he disputed the inaccurate information with Dart from September of 2012 through the present, but that BGC "continues to publish and disseminate such inaccurate information to other third parties."  [Id. ¶¶ 14-16].  Plaintiff maintains that BGC's actions have caused him to suffer "actual damages in the form of lost employment opportunity, harm to reputation, emotional distress, humiliation and embarrassment."  [Id. ¶ 24].

Based on these allegations, plaintiff asserts one count against BGC for violations of the FCRA.  [Id. ¶¶ 28-32].  Specifically, plaintiff alleges that BGC is a consumer reporting agency ("CRA") within the meaning of the FCRA, that it provided a "consumer report" to Dart,[14] and that pursuant to 15 U.S.C. §§ 1681n and 1681o, it is liable for (1) willfully and negligently failing to employ and follow reasonable procedures to assure maximum possible accuracy of plaintiff's consumer report, in violation of 15 U.S.C. § 1681e(b); (2) willfully and negligently failing to comply with the requirements imposed on a CRA, pursuant to 15 U.S.C. § 1681i; and

---

[14] BCG does not dispute that it is a CRA or that the criminal background report it sold to Dart constitutes a consumer report, as both terms are defined in the FCRA.  See [Doc. 47-2 at 1 n.1 (citing [Doc. 43 at 90]); Doc. 52-1 at 2].

(3) willfully and negligently failing to provide notice to him that public record information was being reported for employment purposes, or alternatively, willfully and negligently failing to employ strict procedures to ensure that public record information is complete and up to date, in violation of 15 U.S.C. § 1681k.  [Id.].  Plaintiff seeks actual, statutory, and punitive damages, as well as costs and attorney's fees.  [Doc. 1 at 6].[15]

## II.  SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the Court views all evidence in the light most favorable to and draws all reasonable inferences in the favor of the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Cargo v. Ala., Bd. of Pardons & Parole Div., 391 F. App'x 753, 754 (11th Cir. 2010) (per curiam) (unpublished); Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003) (per curiam).  "Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine

---

[15]  BCG asserts that plaintiff only seeks lost wages and damages for humiliation and lost sleep.  See [Doc. 35-3 ¶ 41 (citing [Doc. 39-2 at 79-80, 84, 89])].  Plaintiff admits that he never sought medical attention for any of the harms he allegedly suffered as a result of BGC's inaccurate reporting, see [Doc. 39-2 at 82], but he asserts that he suffered harm to his reputation by being called a criminal and/or a liar by O'Neill and from being denied a job.  [Doc. 39-2 at 48-49, 52].  He also asserts that he had to purchase his own background check in order to help clear his name and that he suffered emotional distress and anxiety from the fear of losing his prospective job with Dart.  [Id. at 52-53, 56, 60, 79-84].

11

issue of material fact exists and that the movant is entitled to judgment as a matter of law." McCurdy v. DeKalb Cnty., Civil Action File No. 1:09-CV-1989-TWT, 2010 WL 5101405, at *1 (N.D. Ga. Dec. 8, 2010) (citing Fed. R. Civ. P. 56(c)); see also Young v. FedEx Express, 432 F. App'x 915, 916 (11th Cir. 2011) (per curiam) (unpublished); Penley v. Eslinger, 605 F.3d 843, 848 (11th Cir. 2010).

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact, upon which the non-moving party must then submit specific facts showing a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Bagwell v. Peachtree Doors & Windows, Inc., Civil Action File No. 2:08–CV–191–RWS-SSC, 2011 WL 1497831, at *10 (N.D. Ga. Feb. 8, 2011), adopted by 2011 WL 1497658, at *1 (N.D. Ga. Apr. 19, 2011); Premier Assocs., Inc. v. EXL Polymers, Inc., No. 1:08-cv-3490-WSD, 2010 WL 2838497, at *8 (N.D. Ga. July 19, 2010). "The non-moving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Premier Assocs., Inc., 2010 WL 2838497, at *8 (citation and internal marks omitted).

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Jackson v. B&L

Disposal, Inc., 425 F. App'x 819, 820 (11th Cir. 2011) (per curiam) (unpublished) (alteration in original) (citation and internal marks omitted); see also Shuler v. Ingram & Assocs., 441 F. App'x 712, 715 (11th Cir. 2011) (per curiam) (unpublished); Bryant v. U.S. Steel Corp., 428 F. App'x 895, 897 (11th Cir. 2011) (per curiam) (unpublished). "Speculation or conjecture cannot create a genuine issue of material fact." Shuler, 441 F. App'x at 715 (citation omitted); see also Howard v. Or. Television, Inc., 276 F. App'x 940, 941 (11th Cir. 2008) (per curiam) (unpublished) (emphasis, citation, and internal marks omitted) ("Speculation does not create a genuine issue of fact."); Goodman v. Ga. Sw., 147 F. App'x 888, 891 (11th Cir. 2005) (per curiam) (unpublished) (citation and internal marks omitted) ("[A]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable."). "Moreover, the non-moving party cannot create a genuine issue through evidence that is 'merely colorable' or 'not significantly probative.'" Morales v. Ga. Dep't of Human Res., 446 F. App'x 179, 181 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted). Furthermore, "[a] dispute over a fact will only preclude summary judgment if the dispute might affect the outcome of the suit under the governing law." Penley, 605 F.3d at 848 (citation and internal marks omitted); see also Ivey v. First Quality Retail Servs., Civil Action No. 5:09–CV–333

(MTT), 2011 WL 1671927, at *3 (M.D. Ga. May 3, 2011) (citations omitted). "But, [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment for the moving party is proper." Premier Assocs., Inc., 2010 WL 2838497, at *9 (alteration in original) (citation and internal marks omitted).

## III.  DISCUSSION

Plaintiff asserts that BGC negligently and willfully violated the FCRA by: (1) failing to assure maximum possible accuracy of his report, in violation of § 1681e(b); (2) failing to comply with its reinvestigation requirements, in violation of § 1681i; and (3) failing to provide him notice that BGC had furnished a report, containing public record information or, alternatively, failing to employ strict procedures to ensure that the reported information was complete and up to date, in violation of § 1681k.  See generally [Doc. 1].  BGC moves for summary judgment, arguing that plaintiff has abandoned his claim under § 1681i, and that his remaining claims fail because it provided the required notice under § 1681k and it did not negligently or willfully violate § 1681e(b) and plaintiff suffered no actionable damages.  See [Doc. 35-1].  In response, plaintiff contends that there is a disputed issue of fact regarding whether BGC negligently and willfully violated §§ 1681e(b) and 1681k sufficient to

14

defeat summary judgment.  See [Doc. 47].[16]  The Court will address each of plaintiff's claims.

**A.**   **§ 1681e(b) Claim**

Plaintiff alleges that BGC, by failing to follow reasonable procedures to assure maximum possible accuracy when preparing a criminal background check, negligently and willfully violated § 1681e(b) of the FCRA.[17] [Doc. 12 ¶¶ 53-71].  BGC argues that its interpretation of § 1681e(b) was not objectively unreasonable, that it employed procedures to assure maximum possible accuracy, and that it utilizes procedures that a reasonably prudent person would use under the circumstances. [Doc. 35-1 at 12-21].

The FCRA provides that "[w]henever a [CRA] prepares a consumer report[,] it shall follow reasonable procedures to assure maximum possible accuracy of the

---

[16] BGC moved for summary judgment on plaintiff's § 1681i claim, asserting that plaintiff has stated he was no longer pursuing it, see [Doc. 35-1 at 6 n.1 (citation omitted)]; see also [id. at 28), and in plaintiff's response to BGC's statements of undisputed material facts, plaintiff admitted that he was no longer pursing that claim, see [Doc. 35-5 ¶ 44; Doc. 47-1 ¶ 44].  Accordingly, plaintiff's § 1681i claim is deemed abandoned.  See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) (citations omitted) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").  Therefore, it is **RECOMMENDED** that BGC's motion for summary judgment as to plaintiff's § 1681i claim be **GRANTED**.

[17] A negligent violation of the FCRA subjects the CRA to actual damages resulting from its failure, court costs, and reasonable attorney's fees, see 15 U.S.C. § 1681o, while a willful violation also subjects the CRA to statutory and punitive damages, see 15 U.S.C. § 1681n.

15

information concerning the individual about whom the report relates."  15 U.S.C. §

1681e(b).  "The stated purpose of the FCRA is to prevent consumers from being

unjustly damaged because of inaccurate or arbitrary information in a credit report."

Equifax Inc. v. F.T.C., 678 F.2d 1047, 1048 (11th Cir. 1982) (footnote and internal

marks omitted).  Therefore, "the FCRA provides a private right of action against

CRAs such as [BGC]."  Lazarre v. JPMorgan Chase Bank, N.A., 780 F. Supp. 2d 1320,

1328 (S.D. Fla. 2011) (citation omitted).  "However, [t]he [FCRA] does not make

[CRAs] strictly liable for all inaccuracies in the reports they prepare."  Id. (alterations

in original) (citations and internal marks omitted).

      To establish a prima facie violation under § 1681e(b), plaintiff must establish:

"(1) inaccurate information was included in [his] [] report; (2) the inaccuracy was

due to [BGC's negligent or willful] failure to follow reasonable procedures to assure

maximum possible accuracy; (3) [he] suffered [an] injury; and (4) [his] injury was

caused by the inclusion of the inaccurate entry."  Neal v. Equifax Info. Servs. LLC,

No. 103-CV-0761-WSD, 2005 WL 5249668, at *4 (N.D. Ga. Mar. 4, 2005) (citation

omitted).  "[T]he threshold question is whether the challenged credit information is

accurate; if the information is accurate, no further inquiry into the reasonableness

of the [CRA's] procedures is necessary."  Adams v. Nat'l Eng'g Serv. Corp., 620 F.

Supp. 2d 319, 330 (D. Conn. 2009) (first alteration in original) (citations and internal

marks omitted).  But "[i]f the information is inaccurate, plaintiff must then present

some evidence that the [CRA] failed to follow reasonable procedures, as mandated by the statute in section [] 1681e(b)[.]" Id. (third alteration in original) (citation and internal marks omitted).[18] "The [CRA] can escape liability if it establishes that an inaccurate report was generated by following reasonable procedures, which will be a jury question in the overwhelming majority of cases." Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991) (footnote omitted). "Thus, prior to sending a [§ 1681e(b)] claim to the jury, a [CRA] can usually prevail only if a court finds, as a matter of law, that a credit report was 'accurate'." Id.; Jackson v. Equifax Info. Servs., LLC, 167 F. App'x 144, 146 (11th Cir. 2006) (per curiam) (unpublished) (citing Cahlin, 936 F.2d at 1156) (whether an inaccurate report was generated following reasonable procedures is "generally a jury question.").

There appears to be a circuit split on the question of who bears the burden of proof on the issue of whether a CRA followed reasonable procedures. See Dalton

---

[18] Courts have made clear that "failure to follow reasonable procedures is a material element necessary for recovery under § 1681e(b)." Allmond v. Bank of Am., No. 3:07-cv-186-J-33JRK, 2008 WL 2445652, at *2 (M.D. Fla. June 16, 2008) (citation omitted). "The standard for evaluating the reasonableness of an agency's procedures is what a reasonably prudent person would do under the circumstances." Neclerio v. Trans Union, LLC, 983 F. Supp. 2d 199, 210 (D. Conn. 2013) (citations and internal marks omitted). "Judging the reasonableness of a [CRA's] procedures involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy," and "[u]nder § 1681e(b) the standard is 'maximum possible accuracy,' which is more 'than merely allowing for the possibility of accuracy.'" Price v. Trans Union, L.L.C., 839 F. Supp. 2d 785, 793 (E.D. Pa. 2012) (citations and internal marks omitted).

v. Capital Associated Indus., Inc., 257 F.3d 409, 416 (4th Cir. 2001) (collecting cases).
"Specifically, must the plaintiff show that the reporting agency did not follow reasonable procedures, or must the agency show that it did?" Id. (citations omitted); cf. Stewart v. Credit Bureau, Inc., 734 F.2d 47, 51 & n.5 (D.C. Cir. 1984) (holding that plaintiff bears the burden), with Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995) (suggesting that the CRA bears the burden); Cahlin, 936 F.2d at 1156 (same).[19]   Indeed, one court has observed that the standard in the Eleventh Circuit is open to some interpretation.  See Parker v. Parker, 124 F. Supp.

---

[19] In Philbin v. Trans Union Corp., 101 F.3d 957, 963-66 (3d Cir. 1996), *abrogated on other grounds as recognized in* Cortez v. Trans Union, LLC, 617 F.3d 688 (3d Cir. 2010), "the Third Circuit discussed, without endorsement, three possible standards for plaintiff's burden of proof on whether a defendant followed reasonable procedures for a section 1681e(b) claim." Robertson v. Experian Info. Solutions, Inc., Civil No. 1:CV–09–0850, 2010 WL 1643579, at *3-4 (M.D. Pa. Apr. 22, 2010). "Under the most stringent standard, the burden of proof remains with the plaintiff to 'produce some evidence beyond a mere inaccuracy in order to demonstrate the failure to follow reasonable procedures.'" Id. (quoting Philbin, 101 F.3d at 965). "This standard requires a plaintiff to produce minimal evidence from 'which a trier of fact can infer' a failure to follow reasonable procedures." Id. (quoting Philbin, 101 F.3d at 964). "The middle standard requires the plaintiff to maintain the burden of proof even after []he has demonstrated inaccurate reports." Id. "Under the middle standard, the 'plaintiff may present [his] case to the jury on the issue of reasonable procedures merely by showing an inaccuracy in the consumer report.'" Id. (quoting Philbin, 101 F.3d at  965).  "A defendant, however, could prevail on summary judgment 'only if it were to produce evidence that demonstrates as a matter of law that the procedures it followed were reasonable.'" Id. (citation omitted). "Finally under the least stringent standard, once a plaintiff demonstrates inaccuracies in a credit report, the burden shifts to the defendant to prove reasonable procedures as an affirmative defense." Id. (citation omitted).

2d 1216, 1225 (M.D. Ala. 2000).   "Narrowly construing the Eleventh Circuit's approach to evaluating reasonable procedures, a plaintiff may present his case to the jury on the issue of reasonable procedures merely by showing an inaccuracy in the consumer report and nothing more[.]"   Id. at 1225 (citations and internal marks omitted).  On the other hand, "[b]roadly construing the Eleventh Circuit's approach, once a plaintiff demonstrates inaccuracies in a credit report, the burden shifts to [BGC] to prove as an affirmative defense the presence of reasonable procedures."   Id. (citation and internal marks omitted).   That is, "on a motion for summary judgment on a § 1681e(b) claim, a [CRA] can usually prevail only if a court finds, as a matter of law, that a [] report was accurate."   Id. (citation and internal marks omitted).   However, where a plaintiff's report is undisputedly incorrect, "whether [a CRA] had in place reasonable procedures to report information and detect disparities is a question for the jury, not the court."   Id. (citation omitted).

### 1.   *Negligent Violation of § 1681e(b)*

BGC admits that it furnished a report to Dart that inaccurately attributed to plaintiff certain criminal convictions belonging to other individuals with the same first and last name and date of birth.  Plaintiff asserts that BGC "had at its disposal the means to determine that the[] convictions did not belong to [plaintiff], and that [BGC] was able [to] make such a determination within [two days] of being notified of the possible inaccuracy of its initial report."   Adams, 620 F. Supp. 2d at 333.

Although BGC argues that its procedures assure maximum possible accuracy based on its matching criteria and asserts that using social security numbers would not only be unreasonable, but "operationally impossible," since "[c]riminal records indexes do not contain Social Security numbers on their face," [Doc. 35-1 at 19-20], "[i]t is axiomatic that procedures must be reasonable with respect to the particular dispute presented," Lee v. Security Check, LLC, No. 3:09–cv–421–J–12TEM, 2010 WL 3075673, at *12 (M.D. Fla. Aug. 5, 2010).

BGC furnished to Dart an indisputably inaccurate report that did not match plaintiff's full name and social security number that Dart had provided to BGC. Since BGC had in its possession information that could have been used to demonstrate the inaccuracy of the report it furnished to Dart, there is a material dispute of fact as to whether BGC's initial search procedures were in fact reasonable in this instance because "while requiring a [CRA] to go beyond the face of court records to determine whether [those records] correctly report the outcome of the underlying action may be too much to ask, requiring a [CRA] to correctly determine which public records belong to which individual consumers is not." Adams, 620 F. Supp. 2d at 334 (second alteration in original) (citation and internal marks omitted). Simply put, "[f]rom the record, the reasonableness or unreasonableness of [BGC's] procedures is not beyond question." Swanson v. Cent. Bank & Trust Co., No. 5:03-255-JMH, 2005 WL 1324887, at *2 (E.D. Ky. June 3, 2005) (citation and internal

marks omitted); see also id. (quoting Crabill v. Trans Union, LLC, 259 F.3d 662, 664 (7th Cir. 2001) (alterations in original) (internal marks omitted) ("The determination of the 'reasonableness' of the defendant's procedures, like other questions concerning the application of a legal standard to given facts . . . is treated as a factual question even when the underlying facts are undisputed.  It therefore cannot be resolved on summary judgment unless the reasonableness or unreasonableness of the procedures is beyond question . . .").  Thus, "whether [BGC] used reasonable procedures in initially reporting the [inaccurate criminal background report] is a question for the jury to determine."  Id. (citations omitted); see also Adams, 620 F. Supp. 2d at 333.   Accordingly, it is **RECOMMENDED** that BGC's motion for summary judgment as to this claim be **DENIED**.

### 2.   *Willful Violation of § 1681e(b)*

Plaintiff also alleges that BGC willfully violated § 1681e(b), by failing to follow reasonable procedures to assure maximum possible accuracy when preparing his criminal background report.  [Doc. 1 ¶ 31].  BGC contends that in order to determine whether it willfully violated the FCRA, the Court must consider whether its reading of the statute was objectively reasonable based on the Supreme Court's ruling in Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 69-70 (2007).  See [Doc. 35-1 at 13-17]. Specifically, BGC contends that under Safeco, its interpretation of the statute was not objectively unreasonable and that its matching procedures therefore complied with

the requirements of § 1681e(b).  See [id.].  Plaintiff responds that the "reasonable reading" standard established in Safeco is inapplicable to § 1681e(b), and that the determination of whether BGC willfully violated the statute is a question for the jury.  [Doc. 47-3 at 13-22].

"The decision of the Supreme Court in Safeco . . . governs [the Court's] understanding of a willful violation of the [FCRA]."  Levine v. World Fin. Network Nat'l Bank, 554 F.3d 1314, 1318 (11th Cir. 2009).  Under Safeco, "the willfulness requirement of section 1681n(a) encompasses both reckless and knowing violations of the FCRA."  Gillespie v. Equifax Info. Servs., LLC, No. 05 C 138, 2008 WL 4316950, at *5 (N.D. Ill. Sept. 15, 2008) (footnote and citation omitted).  "When a plaintiff does not allege knowing violations of the FCRA," as is the case here, "the claim must be based on recklessness and Safeco's reasonable interpretation test applies."  Fuges v. Sw. Fin. Servs, Ltd., 707 F.3d 241, 249 n.14 (3d Cir. 2012) (internal marks omitted).  "Reckless is defined via an objective standard, action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known."  Gillespie, 2008 WL 4316950, at *5 (citations and internal marks omitted).  In "'recklessness' cases, whether a defendant has actually violated [the] FCRA is simply not the issue."  Fuges, 707 F.3d at 249 n.14 (citations omitted).  Thus, the Supreme Court found that "a company subject to [the] FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but

shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco, 551 U.S. at 69. "So long as the conduct adopted by the company 'could reasonably have found support in the courts,' no wilful violation exists and the reporting agency is entitled to summary judgment as a matter of law." Sheldon v. Experian Info. Solutions, Inc., Civil Action No. 08–5193, 2010 WL 3768362, at *4 (E.D. Pa. Sept. 28, 2010) (quoting Safeco, 551 U.S. at 70 n.20).

BGC argues that it "made a reasonable interpretation of a less-than-pellucid statutory provision and neither the FTC nor any Court of Appeals has ever interpreted § 1681e(b) to require more than the procedures that BGC maintains." [Doc. 35-1 at 17 (citation omitted)]. However, courts have found that "§ 1681e(b) does not contain any statutory text that is less than pellucid and which has not been construed in detail by the Court of Appeals." Price v. Trans Union, LLC, 737 F. Supp. 2d 281, 290 (E.D. Pa. 2010) (citation and internal marks omitted). Moreover, "courts have concluded that the plain language of § 1681e(b) creates an obligation on the part of the [CRA] to ensure the preparation of accurate reports[.]" Farmer v. Phillips Agency, Inc., 285 F.R.D. 688, 699 (N.D. Ga. 2012) (citation and internal marks omitted).

BGC maintains that its procedures "will only return matching records where there is a first name, last name, and date of birth match, together [with] no middle

name mismatch (*i.e.*, the middle name record does not conflict with what the employer supplied)." [Doc. 35-1 at 15]. BGC argues that "[r]eporting records that match complete names and dates of birth is a procedure reasonably designed to assure maximum possible accuracy, and is considered industry best-practice." [Id. at 15-16 (citations omitted)]. However, that is not what BGC did in this case. Dart provided plaintiff's complete name to BGC, but BGC returned records that only matched plaintiff's first and last name, a very common name at that, and despite having in its possession plaintiff's complete name and social security number, BGC took no steps prior to issuing its initial report to confirm whether the "Tony Smith" criminal records it provided to Dart were associated with the full name and social security number of plaintiff.

Although BGC has submitted evidence of its procedures and its efforts to match criminal records relating to the individual that is the subject of the background report, plaintiff has submitted evidence that despite BGC's efforts, the records reported did not relate to plaintiff, and he has also pointed to other matching identifiers that did not match his identifying information, as well as shown that BGC is capable of utilizing social security numbers during the dispute process to confirm whether the records are in fact a match to the individual. Indeed, Kessler even admitted that the automated computer program had no way of differentiating between individuals with the same name and date of birth, and that

24

after it compiled its initial matching records, it then placed the burden on the prospective employer to indicate whether any records did not match the individual. See [Doc. 43 at 67-68; Doc. 37 ¶ 17].

Contrary to BGC's assertions, the Court cannot find, as a matter of law, that no reasonable jury could find that the errors in plaintiff's criminal background report did not result from a willful failure to follow reasonable procedures to assure maximum possible accuracy in preparing the report.  See Bradshaw v. BAC Home Loans Servicing, LP, 816 F. Supp. 2d 1066, 1076-77 (D. Or. 2011) (citation omitted) ("[A] reasonable jury could find that a CRA acted in reckless disregard of its duties by relying [] on automated procedures . . . when the CRA was on notice of the possible inaccuracy of the automated responses.  Therefore, this claim must [] be decided by a jury."); see also Barron v. Trans Union Corp., 82 F. Supp. 2d 1288, 1299 n.9 (M.D. Ala. 2000) (citations omitted) (finding disputed issues of fact on the issue of willfulness entitled plaintiff to present the issue to a jury and noting that the court's "duty at [the summary judgment stage was] not to weigh the evidence or question its veracity; rather, the court must only eliminate claims upon which no rational jury could find for [p]laintiff.").  In short, the Court finds that disputed issues of fact exist with regard to whether BGC acted with a reckless indifference and therefore willfully violated § 1681e(b), and it is therefore **RECOMMENDED** that BGC's motion for summary judgment as to this claim be **DENIED**.

25

B.    **§ 1681k Claims**

Plaintiff also asserts a claim pursuant to § 1681k, alleging that BGC negligently and willfully failed to provide him notice that public record information was being reported for employment purposes, or alternatively, that BGC failed to employ strict procedures to ensure that public record information is complete and up to date.  [Doc. 1 ¶ 31].  BGC has offered evidence showing that once it completed the criminal background check and sent it to Dart, it generated and mailed a letter to plaintiff, notifying him that public record information was provided to Dart as required by § 1681k,[20] see [Doc. 37 ¶¶ 26-29 & Ex. B]; see also [Doc. 43 at 50-53], and plaintiff even admits he received the letter at his home, see [Doc. 39-2 at 50-51, 74]. In his response in opposition to BGC's summary judgment motion, plaintiff asserts that his § 1681k claim "is based on the timing of when [the] notice was sent" and that BGC violated this section by failing to contemporaneously notify him with the transmission of the report to Dart.  [Doc. 47-3 at 22-24].[21]  Plaintiff also asserts that

---

[20] BGC has not made any arguments with regard to whether it maintained strict procedures pursuant to § 1681k(a)(2).  [Doc. 35-1 at 22-24]; see generally [Doc. 52].

[21] BGC argues that plaintiff's "timing argument is a new theory of liability," since his complaint only alleged that he was not provided notice, not that BGC failed to provide contemporaneous notice, and that he should not be allowed to assert an "eleventh hour change in theory."  [Doc. 52 at 7].  However, contrary to BGC's contention, plaintiff has not advanced a new theory in response to its summary judgment motion because in the Joint Preliminary Report and Discovery Plan filed by the parties on September 30, 2013, plaintiff asserted that he "was not provided

BGC's actions in this regard constitute a willful violation of § 1681k since its procedures for generating these notices "are employed as a matter of policy and practice." [Id. at 24].

"Section 1681k applies when a CRA furnishes a consumer report for employment purposes that contains matters of public record which are likely to have an adverse effect on a consumer's ability to obtain employment." Farmer, 285 F.R.D. at 695. In particular, § 1681k provides in pertinent part:

> A [CRA] which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall . . . at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the [CRA], together with the name and address of the person to whom such information is being reported . . . .

15 U.S.C. § 1681k(a)(1). It is undisputed that BGC generated and mailed a notice to plaintiff, but plaintiff contests the timing of the notification and whether BGC's mailing of the notice after its transmission of the criminal background report to Dart satisfied the "at the time" requirement of § 1681k as a matter of law.

---

with contemporaneous notice by [BGC] that the criminal information was going to be reported about him to a potential employer." [Doc. 14 at 2]; see also Forehand v. Fulton Cnty., Ga., 510 F. Supp. 2d 1238, 1251 (N.D. Ga. 2007) (finding defendants were on notice of plaintiff's claim when broadly interpreting a claim asserted in the complaint in conjunction with the joint preliminary report and discovery schedule).

Plaintiff asserts that "[c]ourts have interpreted FCRA section 1681k(a)(1) to require that a [CRA] provide contemporaneous notice," which he contends BGC failed to do.  [Doc. 47-3 at 22 (citing Smith v. HireRight Solutions, Inc., 711 F. Supp. 2d 426, 438 (E.D. Pa. 2010))].  BGC argues that the statute "does not require simultaneous transmission," but that it only requires it to be sent "at the time a CRA provides the report" and that "[n]o court has ever interpreted that phrase to require that the notice be provided at the exact same second[.]"  [Doc. 52 at 8 (internal marks omitted)].  While there is a dearth of case law on this point, at least two district courts have "interpreted 'at the time' to mean 'at the same time.'"  Adams, 620 F. Supp. 2d at 331 (citing Poore v. Sterling Testing Sys., 410 F. Supp. 2d 557, 572 (E.D. Ky. 2006)) (second, third, and fifth alterations in original) ("There is no evidence in the record that [the CRA] ever notified [the plaintiff] that it would be reporting the DUI conviction to [the potential employer], let alone that such communication occurred *at the same time* that [the CRA] notified [the potential employer] of the DUI"); see also Smith, 711 F. Supp. 2d at 438.  In fact, one of the courts specifically found that "[w]hen a [CRA] furnishes a report that contains matters of public record likely to have an adverse effect upon the consumer's ability to obtain employment, it is obligated to do one of two things: (1) notify the consumer *contemporaneously* with the transmission of the report to the user or (2) 'maintain strict procedures' designed to ensure the information is 'complete and up to date.'"  Smith, 711 F.

Supp. 2d at 438 (emphasis added) (citation omitted).  However, these decisions are not binding on this Court and offer no persuasive rationale for requiring contemporaneous or simultaneous notification of the consumer when that requirement is not found in the statutory text.

The issue before the Court involves a "matter of statutory interpretation, which begins with the statute's text." Farmer, 285 F.R.D. at 695.  "The first (and sometimes last) question is whether the [statutory] language at issue has a plain and unambiguous meaning with regard to that particular dispute." Id. (alterations in original) (citation and internal marks omitted).  And, "[w]here a statutory term is undefined, a court looks to the common usage of words for their meaning." Id. (citation and internal marks omitted).  "The canons of construction . . . are [] utilized," and "[t]he entire statutory scheme must be considered; one word or phrase cannot be interpreted in isolation." Id. (citations omitted).

The "cardinal canon" of statutory interpretation is that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." United States v. Aldrich, 566 F.3d 976, 978 (11th Cir. 2009) (internal marks omitted) (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253–54 (1992)).  Here, the statute requires notification "at the time" public record information is reported to the user of the consumer report.  15 U.S.C. § 1681k(a)(1).  Congress easily could have included the word "same" before "time" in § 1681k or otherwise indicated that

CRAs are required to provide simultaneous notice to consumers when furnishing a consumer report for employment purposes, but it did not.  Where statutory language is ambiguous, the Court can turn to legislative history to aid its interpretation, but plaintiff has not pointed to any legislative history indicating that Congress intended the words "at the time" to impose a requirement of contemporaneous or simultaneous notice to the consumer.  Moreover, as BGC points out, [Doc. 52 at 8], the Federal Trade Commission ("FTC"), which was "responsible for enforcing many of the FCRA's provisions," Farmer, 285 F.R.D. at 696, previously had recognized that sending notice by first class mail satisfied the requirement of § 1681k, see 16 C.F.R. pt. 600 app. §613(4), which certainly does not achieve contemporaneous or simultaneous notification, see Farmer, 285 F.R.D. at 696-97 (citing commentary by the FTC's staff to support statutory interpretation).[22]  Thus, the Court is not persuaded to read into the statute a requirement not found in the text, legislative history, or regulatory interpretation of § 1681k.

---

[22] Effective July 26, 2011, the FTC rescinded its commentary on the FCRA, noting that the 1990 Commentary had become partially obsolete and that much of the authority of the FTC to publish rules, regulations, or guidelines had been transferred to the Consumer Financial Protection Bureau.  See 76 Fed. Reg. 44462-01 (July 26, 2011).  The FTC found that it was not "appropriate to transfer the Commentary given its staleness," and rescinded the Commentary.  Id.  Nevertheless, the FTC Commentary remains the only regulatory interpretation, to date, of the notice requirement set forth in § 1681k, and the Court finds it instructive with respect to whether BGC's actions were willful.

Left with ambiguity in the statutory language, the Court could turn to additional canons of construction to discern the meaning of "at the time" as used in § 1681k, but it need not do so to find that BGC is entitled to summary judgment on plaintiff's claim of a willful violation of § 1681k. The <u>Safeco</u> analysis compels the conclusion that BGC did not willfully violate the statute. Faced with an ambiguous requirement to provide notice to the consumer "at the time" public record information is reported to a user of such consumer report for employment purposes, BGC reasonably interpreted the statute to be satisfied by generating and mailing a notice to the consumer upon provision of a report to a requesting party. There is an absence of any authority from the Courts of Appeals contradicting the procedures implemented by BGC, and the FTC regulation authorizing notice by first class mail, which remained in effect through 2011, lends support to BGC's reading of the notification requirement of the statute. <u>See</u> <u>Lee</u>, 2010 WL 3075673, at *13 (noting that the undisputed facts could not establish that defendant acted willfully where plaintiff failed to present proof sufficient to support a finding that defendant's reading of the FCRA was objectively unreasonable or that it acted with an unjustifiably high risk of violating the FCRA). Accordingly, it is **RECOMMENDED** that BGC's motion for summary judgment on plaintiff's claim of a willful violation of § 1681k be **GRANTED**.

BGC's motion for summary judgment on plaintiff's claim for negligent violation of § 1681k likewise does not require the Court to engage in any further statutory construction of the "at the time" notification requirement because, even accepting BGC's reading of the statute, there remains a genuine issue of material fact as to whether BGC negligently failed to provide the notice at the time required by § 1681k. BGC has provided evidence regarding its custom and practice of generating and mailing notices to consumers when a report is provided to a requesting third party. Indeed, there is evidence that BGC generated and mailed a letter to plaintiff dated September 12, 2012, and plaintiff admits that he received the letter. However, BGC has not presented evidence as to the date it actually mailed the letter dated September 12, 2012,[23] and there is a dispute about whether it was mailed before plaintiff contacted BGC to dispute the criminal history report provided to Dart. See [Doc. 39-2 at 75-76 (plaintiff testified that he did not receive

_____

[23] Attached as Exhibit B to Kessler's affidavit "is a letter that BGC sent to Plaintiff *dated* September 12, 2012 that informs Plaintiff that BGC had provided a report containing public record information to Dart." [Doc. 37 ¶ 28 (emphasis added)]. However, Kessler does not state the date on which Exhibit B was, in fact, *mailed* to plaintiff, or that it was mailed before plaintiff contacted BGC. Although Kessler also states that as of the date of the report sent to Dart, "BGC's system automatically sent an FCRA § 1681k(a)(1) letter to any consumer whose report contains public record information," [id., ¶ 26], and that "BGC printed and mailed an FCRA § 1681k(a)(1) letter to Plaintiff when it delivered the *final* report to Dart," [id., ¶ 27 (emphasis added)], these statements do not establish the date that Exhibit B was actually mailed to plaintiff, who claims he received it towards the end of September, after he had contacted BGC upon receiving notice of the incorrect background check from Dart. See [Doc. 39-2 at 50-1, 75-76].

the letter before he called BGC, and he recalled receiving it towards the end of September)].

In Adams, the district court found that defendant's notification, which occurred on the same day that it reported plaintiff's criminal history but after plaintiff had contacted defendant and defendant realized its report may be inaccurate, was insufficient since the "central purpose of the FCRA clearly indicates that, an agency which delays notification until after the agency has reason to question the accuracy of its report has not complied with the spirit of the Act." Adams, 620 F. Supp. 2d at 331-32 (citations omitted).  Here, despite the September 12, 2012, date on the letter, and Kessler's testimony regarding BGC's typical procedures, no conclusive proof has been presented as to the date on which the notice was actually mailed, and there is a disputed issue of fact as to whether BGC notified plaintiff before he contacted BGC.  See Brown v. Lowe's Cos., Civil No. 5:13CV79–RLV, 2014 WL 4854639, at *7 (W.D.N.C. Sept. 30, 2014) (citations omitted) ("The FCRA provides that an agency has not complied with the spirit of the Act where it delays notification to a consumer—that a report has been run—until after the agency has come to have reason to question the accuracy of its report."); see also Custer v. Murphy Oil USA, Inc., 503 F.3d 415, 421-22 (5th Cir. 2007) (finding genuine issue of material fact as to mailing where defendant did not produce any business records or other physical evidence that the notice was sent and "no evidence,

testimonial or otherwise, as to the day on which the notices were sent."); Adams v. Cline Agency, Inc., Civil Action No. 10–cv–02758–WJM–KLM, 2012 WL 2190822, at *2-3 (D. Colo. June 14, 2012) (denying summary judgment where defendant failed to put forth sufficient evidence to support its allegation that notice required to cancel policy was actually delivered to the Postmaster); Helton v. AT&T, Inc., 805 F. Supp. 2d. 223, 230-31 (E.D. Va. 2011) (denying summary judgment where defendants "merely outlined the mailing process they used and failed to produce any physical evidence demonstrating the process used for the mailing of the [relevant document] or showing that [plaintiff] was included on the mailing list at issue" and plaintiff denied receiving it). Viewing the evidence in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, as required when ruling on a motion for summary judgment, the Court finds that there is an absence of evidence regarding when the notice was mailed to plaintiff and the factual dispute regarding the timing of mailing and whether notice was provided "at the time" required by the statute precludes granting summary judgment for BGC on plaintiff's claim of negligent violation of § 1681k. Thus, it is **RECOMMENDED** that BGC's summary judgment motion as to this claim be **DENIED**.

## C.   <u>Actual Damages</u>

Plaintiff "may recover actual damages for any negligent violation of FCRA," including "damages for humiliation, mental distress or injury to reputation and

34

creditworthiness[.]" <u>Gohman v. Equifax Info Servs., LLC</u>, 395 F. Supp. 2d 822, 828 (D. Minn. 2005) (citations omitted).  "Damages are an element of [an FCRA] claim, and without evidence of damages, summary judgment is appropriate."  <u>King v. Asset Acceptance, LLC</u>, 452 F. Supp. 2d 1272, 1280 (N.D. Ga. 2006).  BGC moves for summary judgment as to any negligence claims under the FCRA, asserting that plaintiff has failed to produce any evidence of actual damages.  <u>See</u> [Doc. 35-1 at 24-28].  Plaintiff responds that he has shown he suffered lost wages, reputational harm, and emotional distress.  [Doc. 47-3 at 24-32].  The Court will address each of these claims.

   1.   *Loss of Wages*

   Plaintiff asserts that his employment with Dart was delayed for approximately two weeks due to the inaccurate criminal background report and that he therefore lost wages of between $243 and $426 per week.  [<u>Id.</u> at 26-27].  Although BGC contends that the delay was inevitable because Dart was continuing to evaluate other portions of plaintiff's employment application as late as September 17, 2012, "while awaiting the outcome of his dispute with BGC," [Doc. 35-1 at 25]; <u>see also</u> [Doc. 36 ¶¶ 13-15], plaintiff has offered the testimony of Dart's recruiter, O'Neill, who clearly stated that Dart would not pursue any application or put any time into an application once a background check returned with criminal records and that she immediately denied plaintiff's application once she received the report from BGC,

see [Doc. 48-1 at 20-21, 36-38].  While there is a genuine dispute of fact as to whether Dart would have processed plaintiff's application and hired him two weeks earlier had it not been for the inaccurate report, it does not appear that plaintiff lost any wages as a consequence of the delay because he was ultimately selected for the training program and completed it, and Dart paid him $3,265.37 for his training. [Doc. 36 ¶¶ 23-28; Doc. 36-1 at 23].  Thus, although plaintiff may have been delayed in starting the training program, there is no evidence before the Court that plaintiff lost any wages due to the delay caused by the inaccurate criminal background report, and it is **RECOMMENDED** that BGC's motion for summary judgment be **GRANTED** as to plaintiff's loss of wages claim.

### 2.    *Harm to Reputation and Emotional Distress*

BGC also moves for summary judgment as to plaintiff's claims for emotional distress and harm to his reputation.  [Doc. 35-1 at 25-28; Doc. 52 at 9-11].   Plaintiff admits that he never sought medical treatment for any of the harms he allegedly suffered as a result of the inaccurate report and that he was ultimately allowed in the training program and even offered a permanent job with one of Dart's subsidiaries which he rejected, see [Doc. 39-2 at 48-49, 65, 68, 82]; see also [Doc. 36 ¶¶ 26-27; Doc. 39-1 at 22], but he maintains that he has sufficiently stated a claim for emotional distress and harm to his reputation to withstand summary judgment, see [Doc. 47-3 at 27-33].  In particular, plaintiff alleges that BGC's actions in providing

36

an inaccurate report to Dart caused him to suffer from emotional distress severe enough to result in physical symptoms, including loss of sleep, weight loss, and anxiety.  [Id. at 31-32].  Plaintiff also testified that Dart's recruiter called him dishonest and a liar, see [Doc. 39-2 at 52], even though the recruiter denied making those statements, but she did admit that the negative criminal background report placed him in a negative light in Dart's eyes, see [Doc. 48 at 25-29, 38].

Plaintiff "has provided his own testimony in support of his allegations," and the Court "cannot say, as a matter of law, that [p]laintiff is not entitled to recover damages for emotional distress," especially since "[i]n FCRA cases, a plaintiff is not required to produce evidence of emotional distress beyond his own testimony." King, 452 F. Supp. 2d at 1281 (citation omitted).  Thus, viewing the evidence in the light most favorable to plaintiff, the Court concludes that plaintiff's evidence of damages for emotional distress and harm to his reputation are sufficient to create a question of fact for the jury, see Rogers v. JPMorgan Chase Bank, N.A., No. C11–1689JLR, 2012 WL 2190900, at *12 (W.D. Wash. June 13, 2012), and it is **RECOMMENDED** that BGC's summary judgment motion be **DENIED** as to plaintiff's claim for damages based on emotional distress and harm to his reputation.

## IV. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that BGC's motion for summary judgment, [Doc. 35], be **GRANTED** as to plaintiff's § 1681i claim, § 1681k wilful claim, and loss of wages claim, but **DENIED** as to his § 1681e(b) claims, § 1681k negligence claim, and claim for damages based on emotional distress and harm to his reputation.

**IT IS SO RECOMMENDED** this 5th day of November, 2014.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE