## ATTACHMENT D

## DEFENDANT'S OUTLINE OF THE CASE

**I.     Factual Summary of all General, Special, and Affirmative Defenses Relied Upon**

This case concerns the preparation of a criminal background report. In early September 2012, Plaintiff Tony Smith applied for a truck driver job with a subsidiary of Dart Trucking Company in or around Atlanta. On September 12, 2012, Dart ordered a criminal background check from Defendant e-Backgroundchecks.com, Inc. ("BGC"). That background check contained criminal records that were a complete first name, last name, and date of birth match to Plaintiff, and that were not a middle name mismatch, but nonetheless did not actually belong to Plaintiff.

Plaintiff's report contained the results of a BGC's USOne SEARCH product, a multijurisdictional criminal records database search. BGC receives public records for that database either directly from courts or from third-party vendors that collect records directly from public records sources. Before loading any records into its database, BGC carefully quality checks and audits the information it receives to identify any data anomalies.

Once loaded into the database, information is matched to a particular consumer at the time that each report is ordered. BGC's system requires, as a

default, a full first name, last name, and date of birth match, and no middle name mismatch. The report preparation process proceeds in two steps. In the first step, the employer is presented with demographic information from potentially matching records (but not the records themselves) and is able to review, if available, address and picture information associated with a record to determine if the employer can affirmatively exclude any record. For example, if the results contain records from Texas but the employer knows that the consumer has never been to Texas, they can exclude those records. Thus, in the second step of the process, BGC combines its robust matching logic with input from the end-user, who is best informed to make evaluations of potentially matching records. Once the employer chooses potentially matching records, BGC completes and delivers the report.

At the time that BGC furnished Plaintiff's report to Dart, it sent Plaintiff a letter informing him that it had reported public record information to Dart as part of a consumer report. The letter enclosed a copy of Plaintiff's rights under the Fair Credit Reporting Act, a dispute form to contact BGC to dispute the contents of the report, and a copy of the report itself.

On September 17, 2012 (Mon.), after receiving the letter from BGC with a copy of his report, Plaintiff called BGC to dispute the inclusion of the public records that BGC had reported. BGC e-mailed Dart that same day and told it to

refrain from making any immediate hiring decisions until BGC had a chance to reinvestigate the record. BGC began its reinvestigation on September 17, 2012 and, two days later, on September 19, 2012, issued a corrected report to Dart that removed all of the records from the first report – *i.e.*, it indicated that Plaintiff had no reportable criminal history.

On September 20, 2012, Dart approved Plaintiff to begin its driver training program. In December 2012, Plaintiff completed the driver training program. Dart subsequently offered him full-time employment through one of its subsidiaries, which he rejected.

## II. General, special, and Affirmative Defenses Relied Upon

BGC intends to rely on the defenses that acted at all times without negligence, without recklessness, and without willful intent to injury Plainitiff. BGC also acted at all times in accordance with the Fair Credit Reporting Act. Plaintiff has also suffered no damages.

## III. Relevant Rules, Regulations, Statutes, and Illustrative Case Law

BGC may rely upon, among others, some or all of the following authorities:

- 15 U.S.C. § 1681e(b);
- *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007);

- *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314 (11th Cir. 2009);

- *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241 (3d Cir. 2012);

- *Sarver v. Experian Info. Solutions*, 390 F.3d 969 (7th Cir. 2004);

- *Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996) *abrogated on other grounds by Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010);

- *Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509 (5th Cir. 1982);

- *Spence v. TRW, Inc.*, 92 F.3d 380 (6th Cir. 1996);

- *Hauser v. Equifax, Inc.*, 602 F.2d 811 (8th Cir. 1979);

- *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995);

- *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991);

- *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47 (D.C. Cir. 1984);

- *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638 (S.D. Ala. 2007);

- *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98 (2d Cir. 1997);

- *Price v. Trans Union, L.L.C.*, 839 F. Supp. 2d 785 (E.D. Pa. 2012);

- *Lee v. Sec. Check, LLC*, No. 3:09-cv-421-J-12TEM, 2010 WL 3075673 (M.D. Fla. Aug. 5, 2010);

- *Equifax, Inc. v. F.T.C.*, 678 F.2d 1047 (11th Cir. 1982);

- *Anderson v. Trans Union LLC*, 367 F. Supp. 2d 1225 (W.D. Wisc. 2005);

- *Currier v. Transunion Credit Info. Co.*, No. 06-12365, 2008 WL 795738 (E.D. Mich. Mar. 25, 2008), *disagreed with on other grounds*, *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009);

- *Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994);

- *Sheldon v. Experian Info. Solutions, Inc.*, No. 08-5193, 2010 WL 3768362 (E.D. Pa. Sept. 28, 2010);

- *Cnty. Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 317 F. Supp. 2d 383 (S.D.N.Y. 2004), *aff'd*, No. 04-2982-CV, 2005 WL 3117211 (2d Cir. Nov. 22, 2005);

- *Bryant v. TRW, Inc.*, 689 F.2d 72 (6th Cir. 1982);

- *Nelski v. Trans Union, LLC*, 86 F. App'x 840 (6th Cir. 2004);

- *Jordan v. Trans Union LLC*, No. 1:05 CV 305 GET, 2006 WL 1663324 (N.D. Ga. June 12, 2006);

- *Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253 (S.D. Fla. 2009);

- *Nagle v. Experian Info. Solutions, Inc.*, 297 F.3d 1305 (11th Cir. 2002);

- *Riley v. Equifax Credit Information Services*, 194 F. Supp. 2d 1239 (S.D. Ala. 2002);

- *Cousin v. Trans Union Corp.*, 246 F.3d 359 (5th Cir. 2001);

- *Sampson v. Equifax Info. Servs., Inc.*, No. CV204-187, 2005 WL 2095092 (S.D. Ga. Aug. 29, 2005);

- *Caltabiano v. BSB Bank & Trust Co.*, 387 F. Supp. 2d 135 (E.D.N.Y. 2005);

- *Patrolmen's Benevolent Ass'n of New York v. City of New York*, 310 F.3d 43 (2d Cir.2002);

- *Comeaux v. Experian Info. Solutions*, No. CIV.A.2:02 CV 0304, 2004 WL 1354412 (E.D. Tex. June 8, 2004);

- *Garrett v. Trans Union, L.L.C.*, No. 2:04-CV-00582, 2006 WL 2850499 (S.D. Ohio Sept. 29, 2006);

- FED. TRADE COMM'N, REPORT TO CONGRESS UNDER SECTIONS 313 AND 319 OF THE FAIR AND ACCURATE CREDIT TRANSACTIONS ACT OF 2003 (Dec. 2004);

- FED. TRADE COMM'N, REPORT TO CONGRESS UNDER SECTION 319 OF THE FAIR AND ACCURATE CREDIT TRANSACTIONS ACT OF 2003 (Jan. 2015); and

- CONSUMER FIN. PROTECTION BUREAU, KEY DIMENSIONS AND PROCESSES IN THE U.S. CREDIT REPORTING SYSTEM (Dec. 2012).